[No. 23302-9-II.    Division Two.    August 27, 1999.]

JO VONNE LINGVALL, *Respondent*, v. ROBERT BARTMESS, ET
AL., *Appellants*.

*G. Michael Zeno, Jr.,* of *Davidson, Czeiler, Kilpatric & Zeno, P.S.,* for appellants.

*William J. McDowell,* for respondent.

ARMSTRONG, A.C.J. — Robert and Shirley Bartmess appeal a judgment granting a driveway easement by prescription to Jo Vonne Lingvall and quieting title to a triangle section

of property on which the driveway sits (the triangle) to Lingvall's successor-in-interest, Cindy Sue Price. They argue that Lingvall's use of the driveway and triangle was permissive and that Lingvall did not adversely possess the triangle for the 10-year period. They also argue that the trial court erred in granting Lingvall title to the triangle by adverse possession and a prescriptive easement on the same property. We affirm.

## FACTS

Jo Vonne Lingvall sued her neighbors, Robert and Shirley Bartmess, to quiet title to the northwestern corner of the Bartmesses' property or, in the alternative, to establish a prescriptive easement over a driveway in the same location. The Bartmesses brought a third-party complaint for ejectment against Lingvall's daughter, Cindy Sue Price, who now owns the parcel of land adjacent to the property in dispute.[1] The trial court granted Lingvall a prescriptive easement and quieted title to the triangle in Price by adverse possession.

The triangle was originally contained within one parcel of land owned by Grace Blank. When Grace Blank died in 1977, the property went to her sons, Alvin and Bobby Blank. Because the brothers could not agree on a division of their mother's estate, the probate court divided the lot into two parcels. Thus, in 1980, the southern parcel was awarded to Bobby and the northern parcel was awarded to Alvin. The West Sequim Bay Road borders both parcels to the West, and Sequim Bay is the eastern border.

At the time that Grace Blank's property was divided, a driveway, with a fence along its southern border, provided access from West Sequim Bay Road to the northern parcel (Alvin's property). Although it was apparently unknown at the time, a portion of the driveway and fencing encroached on the northwest corner of the southern parcel (Bobby's

---

[1]The Bartmesses also named Cindy Price's husband, Douglas, in the complaint. He later quitclaimed his interest in the property to Cindy Price.

property). The triangle was defined by a cattle fence on the south and the West Sequim Bay Road to the West.

When Alvin died in 1982, his wife, Jo Vonne Blank (now Lingvall) succeeded to his interest in the northern parcel. Bobby and Alvin Blank were contentious regarding the division of their mother's assets and remained antagonistic towards one another throughout the rest of Alvin's life. Although relations with other family members were cordial, the brothers' animosity carried over to Jo Vonne Lingvall following Alvin's death.

When the property was divided in 1980, there was a house on the northern parcel. This house was rented out by Alvin Blank and/or his wife Jo Vonne Lingvall continuously from June 1980 to July 1989. The tenants used the driveway as their sole access to the rental house. Lingvall, who lived on the other side of West Sequim Bay Road from 1980 through 1989, built a barn on the northern parcel in 1982 and used the driveway to get to the barn. Bobby Blank and his son used the driveway infrequently to get to a barn on the southern parcel, for clamming and boating, and for a meeting with Lingvall to discuss a power-line easement. A neighbor, Melvin Baker, occasionally used the driveway when he grazed cattle and cut hay on the southern parcel.

When the rental house and barn on Lingvall's property burned to the ground in 1989, she and her second husband built a new house on the northern parcel. They moved in that same year and continued to use the driveway to access their new home. Before she built the house, Lingvall divided the northern parcel into two lots. She gave the western lot to her daughter, Cindy Sue Price, and built her home on the lot to the East. The southwest corner of Price's lot abuts the triangle. Lingvall's short plat of the northern parcel includes an easement, apart from the driveway, that provides access from West Sequim Bay Road across the western lot for the benefit of Lingvall's eastern lot.

Sometime between 1982 and 1985, Lingvall planted two flowering plums within the triangle. During the winter of

1985-1986, Lingvall and her husband cleared brush and wild shrubbery from the triangle; they have mowed and maintained the area ever since. Some time after 1986, Lingvall planted pine trees in the area. She and her husband landscaped and maintained the area continuously and exclusively from at least 1986 to December 1997.

Although he had numerous opportunities to do so, Bobby Blank never challenged Lingvall's possession of the triangle or use of driveway until November 7, 1994. On November 7, 1994, Lingvall, Price, and Bobby Blank's son, Jeff, met with several realtors to establish the boundary lines of Bobby's property. When Lingvall was shown a survey of Bobby's property, she allegedly said, "Does this mean I do not get to use the driveway any more?" There was testimony that Jeff Blank, who had power of attorney for his father, gave Lingvall permission to use the driveway until the southern parcel was sold. Apparently, Jeff Blank also told her she could take the plants in the triangle. Within a day of that meeting, Jo Vonne Lingvall consulted an attorney. She continued to use the property as her own, despite Jeff Blank's attempt to block her use with some string along the survey boundary. Bobby Blank conveyed his property to the Bartmesses on June 19, 1996.

## ANALYSIS
### A. Prescriptive Easement

The Bartmesses contend that the trial court erred in concluding that Lingvall's use of the driveway was adverse. Because the record supports this conclusion, we affirm.[2]

█ Although prescriptive rights are not favored, a prescriptive easement can be established by showing: "(1)

---

[2]The Bartmesses also challenge two factual findings: (1) that any use of the driveway from 1980 to 1994 was "with Ms. Lingvall's tacit and/or specific permission," and (2) that "the driveway 'served exclusively the northerly parcel.'" Because these findings are not necessary to support the legal conclusion that Lingvall's use of the driveway was adverse and that her possession of the triangle was hostile (discussed under the adverse possession claim), we do not address the sufficiency of the evidence to support these findings.

use adverse to the right of the servient owner, (2) open, notorious, continuous, and uninterrupted use for the entire prescriptive period, and (3) knowledge of such use by the owner at a time when he was able to assert and enforce his rights." *Dunbar v. Heinrich*, 95 Wn.2d 20, 22, 622 P.2d 812 (1980). The prescriptive period in Washington is 10 years. *Compare Wasmund v. Harm*, 36 Wash. 170, 176, 78 P. 777 (1904), *with* RCW 4.16.020.

■ If the essential factual findings are not in dispute, whether use is adverse or permissive is purely a question of law. *See Petersen v. Port of Seattle*, 94 Wn.2d 479, 485, 618 P.2d 67 (1980); *Lee v. Lozier*, 88 Wn. App. 176, 181, 945 P.2d 214 (1997); *cf. Peeples v. Port of Bellingham*, 93 Wn.2d 766, 771, 613 P.2d 1128 (1980) (outlining standard of review under analogous doctrine of adverse possession), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984); *but see, e.g., Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn.2d 75, 84, 123 P.2d 771 (1942), *modified on other grounds by Cuillier v. Coffin*, 57 Wn.2d 624, 358 P.2d 958 (1961); *Pedersen v. Department of Transp.*, 43 Wn. App. 413, 417, 717 P.2d 773 (1986); *Miller v. Jarman*, 2 Wn. App. 994, 997, 471 P.2d 704 (1970); *cf. Miller v. Anderson*, 91 Wn. App. 822, 828, 964 P.2d 365 (1998) (adverse possession). Unchallenged factual findings are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

■ Adverse use does not import "ill will" but means "use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right." *Malnati v. Ramstead*, 50 Wn.2d 105, 108, 309 P.2d 754 (1957); *Pedersen*, 43 Wn. App. at 417. Adverse use is measured objectively based on the observable acts of the user and the rightful owner. *Dunbar*, 95 Wn.2d at 27.

The Bartmesses contend that the evidence implies permissive use because there was (1) a family relationship between the parties, (2) mutual use of the driveway by Lingvall and Bobby Blank, and (3) use that occurred on

neighboring parcels of land. The Bartmesses are correct that Washington courts have inferred permissive use in each of these circumstances. *See, e.g., Granston v. Callahan*, 52 Wn. App. 288, 294-95, 759 P.2d 462 (1988) (close family relationship between brothers living on adjacent parcels supports inference of permissive use); *Jarman*, 2 Wn. App. at 997 (mutual use of driveway supports determination of permissive use); *Roediger v. Cullen*, 26 Wn.2d 690, 707, 175 P.2d 669 (1946) (permissive use may be implied in "any situation where it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence"). But, in each case, the facts supported that inference.

Here, the undisputed facts establish adverse use. First, although adverse use does not import ill will, *Malnati*, 50 Wn.2d at 108, the antagonistic relationship between Bobby and Alvin Blank negates any inference of permissive use that might typically arise between brothers. Alvin and Bobby Blank could not agree on the division of their mother's property. The probate court had to resolve the dispute, which included the land where the driveway is located. They remained antagonistic throughout Alvin's life, and their mutual animosity carried over to Lingvall. The Bartmesses point out that the animosity between the brothers did not extend to other family members but, given the antagonism between Bobby and Alvin and Lingvall, the parties' relationships with other family members are not relevant.

Relying on *Miller v. Jarman* and *Crites v. Koch*, 49 Wn. App. 171, 741 P.2d 1005 (1987), the Bartmesses also argue that mutual use of the driveway on neighboring parcels of land supports an inference of permissive use. They argue that Bobby or his son used the driveway to access the barn on Bobby's property, to access the waterfront, and to meet with Lingvall to discuss a powerline easement. In addition, a neighbor, Mel Baker, used the driveway to run cattle and to cut hay on Bobby's property.

In *Jarman*, the owners of adjacent properties used each

other's driveways regularly to access their garages for a period of 40 years. *Jarman*, 2 Wn. App. at 995. In *Crites*, the parties agreed that farmers commonly crossed and parked equipment on their neighbors' fields. Therefore, use of the neighbors' land was merely a neighborly accommodation and held to be permissive. *Crites*, 49 Wn. App. at 177-78.

Here, Lingvall's and Bobby Blank's use of the driveway was quite different. It is undisputed that Bobby's use was infrequent. In contrast, Lingvall and her tenants used the driveway regularly and continuously. A prescriptive right can be established "notwithstanding the fact that the owner of the servient estate and others who desired to go upon the road also used it." *Hendrickson v. Sund*, 105 Wash. 406, 410, 177 P. 808 (1919). The claimant need not be the only person using the driveway "so long as he exercises and claims his right independent of others." *Anderson v. Secret Harbor Farms, Inc.*, 47 Wn.2d 490, 494, 288 P.2d 252 (1955) (citations omitted).

Lingvall's tenants used the driveway as their sole access to the rental property from 1980 through 1989. Lingvall, who lived just across the street, regularly used the driveway. In 1982, she built a barn on the property and used the driveway to get to that barn. In 1989, she built a house on her property and continued to use the driveway for access to her new house.

Although Mel Baker used the driveway to run cattle and to cut hay on Bobby's land, he also testified that he had permission from Lingvall to run cattle on her land. Thus, Baker's use of the roadway is not inconsistent with Lingvall's prescriptive challenge. Lingvall never asked permission to use the roadway and was never challenged by Bobby Blank or his representatives from 1980 through November 7, 1994. "[U]nchallenged use for the prescriptive period is a circumstance from which an inference may be drawn that the use was adverse." *Cuillier*, 57 Wn.2d at 627; *see Washburn v. Esser*, 9 Wn. App. 169, 171 n.1, 511 P.2d 1387 (1973).

The Bartmesses also argue that Lingvall did not prove

adverse use because she did not improve the roadway. This is not the appropriate test. The question is whether she used the property as if she were the owner, "entirely disregarding the claims of others, asking permission from no one." *Malnati*, 50 Wn.2d at 108. The record clearly supports the conclusion that Lingvall's use was adverse.

The Bartmesses finally contend that the easement shown on the short plat of her property "put the world on notice that Lingvall considered her access to West Sequim [Bay] Road to be across her own property, rather than across Bobby Blank's property." It has long been recognized in Washington that we look to the manner in which the party claiming a prescriptive easement has used the property; the claimant's subjective beliefs are irrelevant. *Dunbar*, 95 Wn.2d at 27. Here, Lingvall's and her tenant's regular and continuous use of the driveway for ingress and egress was notice to the world that she used the driveway under a claim of right.

## B. Adverse Possession

The Bartmesses next argue that Lingvall did not establish adverse possession of the triangle because her possession was not hostile. They also argue that the 10-year statutory period has not been met. We disagree.

To establish adverse possession, the claimant must show possession that is: (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile for the 10-year statutory period. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989) (citing *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984)); RCW 4.16.020. The party claiming adverse possession bears the burden of proving each element. *ITT Rayonier*, 112 Wn.2d at 757. Adverse possession is a mixed question of law and fact: whether the essential facts exist is for the trier of fact, but whether the facts constitute adverse possession is for the court to determine as a matter of law. *Peeples*, 93 Wn.2d at 771.

Citing *Anderson v. Hudak* and *Hunt v. Matthews*, the

Bartmesses first argue that Lingvall did not prove hostility because she did not "do everything a true owner could have done" with the land. *Anderson v. Hudak*, 80 Wn. App. 398, 907 P.2d 305 (1995); *Hunt v. Matthews*, 8 Wn. App. 233, 505 P.2d 819 (1973), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. They contend that all Lingvall did was plant a few small trees and keep the grass and weeds down. They suggest that she could have built a fence.

The Bartmesses misconstrue the statements in *Anderson* and *Hunt*. The element of hostility does not *require* that a person do everything an owner could do with the land. Instead, when a claimant does everything a person could do with a particular property, it is simply *evidence* of the open hostility of that claim. *Anderson*, 80 Wn. App. at 403; *Hunt*, 8 Wn. App. at 237. Hostility "requires only that the claimant treat the land as his own as against the world throughout the statutory period." *Chaplin*, 100 Wn.2d at 860-61. The nature of possession is determined objectively by the manner in which the claimant treats the land. *Id.* at 861.

Here, Lingvall planted two flowering plums and pine trees in the triangle. She and her husband cleared away brush and wild shrubbery. They landscaped, mowed, and maintained the area continuously and exclusively from at least 1986 to December 1997.

But relying on our decision in *Anderson*, the Bartmesses argue that planting trees without maintaining them is not enough to establish adverse possession. *See Anderson*, 80 Wn. App. at 404. *Anderson* is distinguishable because the claimants presented no evidence, other than planting the trees, to establish hostility. *Id.* And we recognized in *Anderson* that claiming, maintaining, and occupying the land around trees is evidence of hostility. *Id.* (citing *Otto v. Cornell*, 119 Wis. 2d 4, 349 N.W.2d 703, 706 (1984)). Lingvall planted the trees, landscaped, mowed, and maintained the area around those trees. Thus, the trial court did not err in concluding that her possession of the triangle was hostile.

The Bartmesses also argue that Lingvall did not act like a true owner because she did not exclude others from the triangle. They note that Bobby Blank and Mel Baker also used the driveway. As discussed in the prescriptive easement section, Bobby's use was infrequent and Baker had permission to run cattle on Lingvall's land, as well as Bobby's. Therefore, Baker's use of the triangle was not hostile to Lingvall, such that she would need to exclude him from the property.

The Bartmesses also raise the argument that a familial relationship suggests that their possession of the triangle was not hostile. As discussed above, based on uncontroverted facts, this argument is without merit.

The Bartmesses next argue that because Bobby Blank's property was unimproved, Lingvall's possession of the property must be more obtrusive, so as to put the true owner on notice. "[W]hat constitutes possession or occupancy of property for purposes of adverse possession, necessarily depends to a great extent upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Frolund v. Frankland*, 71 Wn.2d 812, 817, 431 P.2d 188 (1967), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. The concern in vacant or unimproved land cases is that an absent owner will not have notice of the adverse possessor's intention to claim title to his land. *See Hunt*, 8 Wn. App. at 236-38; *People's Sav. Bank v. Bufford*, 90 Wash. 204, 208, 155 P. 1068 (1916). That concern is not present here, because it is undisputed that Bobby Blank had numerous opportunities to challenge Lingvall's possession of the triangle but failed to do so.

## C. Ten-Year Statutory Period

█ The Bartmesses also contend that Lingvall did not adversely possess the triangle for the 10-year statutory period. They argue that Lingvall's possession of the triangle was no longer adverse once Jeff Blank gave her permission to use the driveway at the meeting on November 7, 1994. Lingvall's possession of the triangle began, at the earliest,

in 1985 when she planted two flowering plum trees. Therefore, if Jeff Blank's statement interrupted possession, then the Bartmesses would be correct that Lingvall did not meet the 10-year requirement. But the evidence does not support the Bartmesses' assertion that Jeff Blank's statements interrupted possession.

At a meeting with the realtors to discuss the boundaries of Bobby Blank's property, Jeff Blank apparently gave Lingvall permission to use the driveway. This occurred in 1994, four years after Lingvall's prescriptive easement over the driveway would have matured.[3] He also told her that she could take the plants in the triangle. These statements are not sufficient to interrupt Lingvall's adverse possession of the triangle. "Where the entry has been adverse and hostile, its character as such could not be interrupted or destroyed by the property owner's unsought consent." *Cf. Huff v. Northern Pac. Ry.*, 38 Wn.2d 103, 113, 228 P.2d 121 (1951) (citing *Naporra v. Weckwerth*, 178 Minn. 203, 226 N.W. 569, 65 A.L.R. 124 (1929)) (prescriptive easement case). To interrupt adverse possession there must be actual cessation of the possession; a mere protest will not interrupt possession that is hostile at its inception. *See Huff*, 38 Wn.2d at 113.

The trial court's unchallenged finding states that Lingvall continuously and exclusively landscaped and maintained the triangle from 1986 until 1997. Thus, even if Jeff Blank's statement telling Lingvall to take the plants could be perceived as interrupting her possession, there is no evidence that she removed the plants. Instead, the evidence indicates that she continued to possess the area, by landscaping and maintaining it, as if she were the true owner.

### D. Termination of Easement

The Bartmesses also argue that the trial court erred

---

[3]Lingvall and Alvin Blank and/or their tenants used the driveway from the time Grace Blank's property was divided in 1980.

in quieting title to the triangle in Price, Lingvall's successor-in-interest, by adverse possession and in granting a prescriptive easement to Lingvall over the same land. They argue that when title to the triangle passed to Lingvall by adverse possession, the easement that Lingvall had established by 1990 should have been extinguished. *See Coast Storage Co. v. Schwartz*, 55 Wn.2d 848, 853, 351 P.2d 520 (1960).

Because we have affirmed the trial court's award of the triangle to Price by adverse possession, the issue, as to the Bartmesses, is moot. An issue is moot if we can no longer provide effective relief. *See Washam v. Pierce County Democratic Cent. Comm.*, 69 Wn. App. 453, 458, 849 P.2d 1229 (1993). Neither Lingvall nor Price challenge the trial court's ruling, and because the Bartmesses no longer have an interest in the property, we cannot grant them effective relief.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.