FILED
COURT OF APPEALS
DIVISION II

2013 MAR 12 AM 8: 40

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL O. MATTHEWS and DIANE M. MATTHEWS, husband and wife, and the marital community composed thereof, | No. 42666-8-II |
| Appellants, | |
| v. | |
| T. & T. LARSON, a partnership; TERRY V. LARSON and TRACY V. LARSON, single men, | UNPUBLISHED OPINION |
| Respondents. | |
| and | |
| BARRY WAYNE WAGLER, a single man, | |
| Third Party Defendant. | |

HUNT, J. — Diane M. and Michael O. Matthews appeal the superior court's grant of summary judgment to T. & T. Larson, owned by Terry V. Larson and Tracy V. Larson, (collectively, the Larsons), and denial of summary judgment to them (the Matthews) on their adverse possession claim; the Matthews also appeal the superior court's denial of their motion for reconsideration. The Matthews argue that the superior court erred because (1) they produced evidence sufficient to establish the elements of adverse possession as a matter of law; and (2) they established that they had adversely possessed the disputed property for the requisite 10-year period as a matter of law and, therefore, we should remand the case to the superior court to

determine damages under RCW 4.24.630, the trespass statute. We affirm in part, reverse in part, and remand in part for trial.

FACTS

I. USE OF DISPUTED LAND[1]

In 1970, Carol A. and Dennis R. Larson (Carol and Dennis)[2] bought property at 247 Altoona-Pillar Rock Road in Wahkiakum County; at the time, Leo Raistakka, owned forest land to the south. Around 1971, a poorly maintained barbed wire fence, composed of one to three strands of barbed wire, existed somewhere within Raistakka's southern forest land, a portion of which is the subject of this lawsuit. The record is not clear about the precise location of this barbed wire fence other than it ran east-to-west, parallel to the Altoona-Pillar Rock Road property's southern property line, somewhere in Raistakka's forest land to the south. It is also unclear from the record whether Raistakka originally built this barbed wire fence or whether he acknowledged it as a mutual property boundary, as opposed to an interior fence used to control

---

[1] In the proceedings below, the Matthews asserted that they had gained title by adverse possession to an undefined portion of the Larsons' land, which extended from the Matthews' southern property line to a dilapidated barbed wire fence that once existed within the Larsons' forest land but has since been removed, and that the Larsons had trespassed when they had cut timber and had removed lawn and plantings in this disputed area.

[2] Carol A. and Dennis R. Larson are not related to Terry and Tracy Larson, the owners of T. & T. Larson and the defendants in this action. Intending no disrespect but seeking clarity, we refer to Carol and Dennis Larson by their first names.

his cattle's grazing.[3] According to Carol, she and Dennis neither built nor maintained this barbed wire fence, which was located "roughly halfway" within the forest land behind their backyard. Clerk's Papers (CP) at 166.

### A. Altoona Owners' Encroachments on Land to South

#### 1. Carol and Dennis, 1970—1975

After taking possession of the Altoona-Pillar Rock Road property, Carol and Dennis (1) began "mowing and maintaining" a backyard, which eventually expanded and crossed over their southern property line and abutted the tree line of Raistakka's forest land to the south; and (2) constructed a drainage ditch, which ran from their house to an undetermined point in the forest.[4] CP at 168. According to Carol, she and Dennis "used and maintained" all of the land extending from their mowed backyard up to the barbed wire fence because they thought the land was theirs[5]: They allowed their children to play in the mowed backyard behind their house up to the barbed wire fence (but never beyond it); and Carol occasionally collected "bark dust" from the forest for her garden. CP at 170.

From 1975 to 1980, Carol and Dennis rented the Altoona-Pillar Rock Road property to two different tenants. The record contains no information for this five-year period about how

---

[3] Around 1971, Raistakka's cattle escaped from his land to the south and entered onto Carol and Dennis' property. When Carol told Raistakka about these cows, he apologized and told her that he would "fix the fence"; according to Carol, this statement meant Raistakka acknowledged that the cows were on her property and that she and Dennis owned the land up to the barbed wire fence. Clerk's Papers (CP) at 167.

[4] The record does not state where this drainage ditch was located or where it terminated within Raistakka's forest land.

[5] CP at 20.

these tenants used the property's backyard or the forest land to the south surrounding the barbed wire fence.

## 2. Matthews, 1980—2008

On July 9, 1980, Diane M. and Michael O. Matthews purchased the Altoona-Pillar Rock Road property from Carol and Dennis. Beyond establishing that the "mowed" area was "definitely the yard," the Matthews did not survey the property, walk its boundaries, or discuss its boundary lines with Carol and Dennis. CP at 139. Carol and Dennis did not mention the barbed wire fence to the Matthews or claim that it was part of the Altoona-Pillar Rock Road property. The Matthews, however, observed a barbed wire fence, "somewhat in disrepair," within the forest land south of their house, about "50 feet" from the edge of their mowed backyard; they assumed that this barbed wire fence marked their property's southern boundary. CP at 102, 104. Like Carol and Dennis, the Matthews did not improve the barbed wire fence, replace any of its deteriorated barbed wire, or otherwise maintain the fence's then-existing condition. According to the Matthews, they continued to "use" and to "improve" their expanded and mowed backyard and the forest land extending from the edge of their backyard to the barbed wire fence, much like Carol and Dennis previously had done. CP at 108.

In 1980 or 1981, the Matthews constructed a chicken coop, or "shed," part of which extended over their southern property line.[6] CP at 13. Over the next 28-year period, the Matthews gradually planted and maintained landscaping, including two rhododendrons, sod grass, flowers, and shrubs, in the portion of their backyard that extended from their southern

---

[6] This chicken coop/shed was still in existence when the superior court denied the Larsons' summary judgment motion as to this encroachment.

property line to the tree line of the forest land to the south. The record, however, does not state when these landscaping improvements were completed. Apparently somewhere between the Matthews' southern property line and the barbed wire fence,[7] the Matthews also created two compost piles, dumped weeds and other plant clippings, cleared an area for sunbathing, built a little log house for their son, and stored an old car. Again, the record does not state when or how frequently these activities occurred or where on the disputed property they took place.

### B. Larsons' Purchase and Survey of Land to South, 2004

In 2004, T. & T. Larson, owned by Terry and Tracy Larson, purchased the forest land south of the Matthews' property, intending to log it.[8] The Larsons did not survey the forest land at the time of purchase; instead, they merely "drove by" the land and viewed it from the road. CP at 92.

In 2006, before commencing logging operations, the Larsons hired Karl Germunson to survey their forest land and to establish its true property lines. Around this time, the barbed wire fence was in a very "deteriorated" state: Parts of the barbed wire were missing, and the fence was apparently low enough to the ground that that the Matthews could step over it when they crossed onto the Larsons' land to view elk. CP at 107. Germunson surveyed the Larsons' land and marked its true property lines. In the area where the Larsons' and the Matthews' properties

---

[7] The record is not clear whether these activities occurred in the forest land surrounding the barbed wire fence or only in the portion of the Matthews' mowed backyard that extended over their southern property line.

[8] Raistakka had previously transferred the forest land south of the Altoona-Pillar Rock Road property to Barry Wayne Wagler, who then sold it to the Larsons. Once included as a third party defendant, Wagler no longer appears to be a party in this appeal.

met, Germunson found (1) a "shed and chicken coop," which partially encroached over the Matthews' southern property line on to the Larsons' land; and (2) some "shrubs and lawn," which also extended onto the Larsons' land by at least 27.11 feet. CP at 65. Germunson noted these areas on his survey diagram as the "edge of [the] mowed area and shrubs." CP at 13. At no point during his survey did Germunson see a barbed wire fence or any wire fencing; nor did he include a barbed wire fence on his survey diagram. Germunson shared his survey findings with both the Larsons and the Matthews.

After receiving Germunson's survey, the Larsons walked the boundaries of their land and saw the Matthews' chicken coop/shed, lawn, rhododendrons, and brush clippings in the cleared area of the Matthews' backyard that extended over the true property line. Within the forested area of the Larsons' land, however, the Larsons observed only "debris," an "old oil filter," and "small garbage type stuff." CP at 179. They also noticed some "barbed wire" or "fence wire" in the ground, but they did not consider it a "fence."[9] CP at 174, 181.

Based on Germunson's survey, in July 2006 the Larsons' attorney sent a letter to the Matthews, informing them that their chicken coop/shed and landscaping were encroaching on the Larsons' land and that the Matthews needed to remove these encroachments immediately. This letter included a copy of Germunson's survey diagram. After receiving this letter and Germunson's survey, the Matthews did not discuss their property's boundaries with the Larsons or state that they believed the barbed wire fence had marked their property's southern boundary.

---

[9] According to Terry Larson, he did not see a barbed wire fence within the forested area of his land, only "wire in the ground." CP at 130.

6

The Larsons installed seven-foot long metal fence posts along the perimeter of their land, which someone removed a month later.

### C. Larsons' Logging their Land and Removing Matthews' Encroachments

In September 2006, the Larsons applied for a permit to log their land. CP at 43. Washington State Department of Natural Resources forester Ed Bressler walked the Larsons' land with them; he, too, saw no barbed wire fence. The Larsons received a logging permit, logged their forest land, and removed the two rhododendrons and the Matthews' landscaping and lawn that extended over the true property line, as depicted on Germunson's survey diagram.

## II. PROCEDURE

In December 2008, the Matthews brought an action against the Larsons (1) to quiet title to "a long . . . trapezoidal piece of property," which comprised the portion of their mowed backyard that encroached over their southern property line and extended to the alleged barbed wire fence within the Larsons' forest land, based on their having adversely possessed this disputed property for the requisite 10-year statutory period; and (2) for trespass damages. CP at 104.

In 2010 the Matthews hired Calvin Hampton to survey "a line described . . . as a fence line" located where the Matthews believed the barbed wire fence had previously existed. CP at 201. In September 2010, Hampton drew a diagram of the approximate location where the

7

Matthews believed the barbed wire fence had been and a trapezoid-shaped "conflict area."[10] CP at 203. This fence line was south of the Matthews' true south property line.

In 2011, the Larsons moved for summary judgment on the Matthews' adverse possession claim, arguing that the Matthews could not establish the elements of adverse possession for the full 10-year statutory period. The Matthews opposed the Larsons' summary judgment motion, alleging that there were factual issues in dispute about the existence of the barbed wire fence and the nature of their (the Matthews') possession. The Matthews also brought a counter motion for summary judgment, seeking an order that they had acquired title to the entire disputed property (from their southern property line to the barbed wire fence) as a matter of law because they had adversely possessed it for 10 years.

The superior court granted the Larsons' motion for summary judgment, concluding that the Matthews had failed to establish that they had adversely possessed any portion of the disputed property, except for the area where their chicken coop/shed had encroached over the Matthews' southern property line, which encroachment the Larsons did not contest on summary judgment. The superior court apparently also denied the Matthews' counter motion for summary judgment, at least to the extent that it related to land beyond the chicken coop/shed.[11] The Matthews moved for reconsideration, which the superior court denied.

---

[10] The Matthews alleged that, while logging the land, the Larsons had removed or destroyed the barbed wire fence that they (the Matthews) claimed as their property's southern boundary. The Larsons denied that they played a role in its removal or destruction.

[11] The superior court's order granting the Larsons' motion for summary judgment does not also deny the Matthews' counter motion for summary judgment; and we find no documents designated for the record before us on appeal reflecting such denial. Nevertheless, such order of denial is implied by the superior court's actions and the Matthews' appeal.

No 42666-8-II

The Matthews appeal.

## ANALYSIS

The Matthews argue that the superior court erred in granting summary judgment to the Larsons and in denying summary judgment and reconsideration to them (the Matthews) because they established as a matter of law that they had adversely possessed the *entire* disputed area (from their southern property line to the barbed wire fence) for the requisite 10-year period. We agree in part and disagree in part. We hold (1) that the evidence shows the presence of genuine issues of material fact about whether the Matthews adversely possessed the expanded and mowed backyard from their southern property line to the tree line on the Larsons' land, thereby defeating summary judgment for each party for this disputed area; and (2) the undisputed material facts show that the Larsons are entitled to judgment in their favor as a matter of law for the disputed area from the Larsons' tree line to the barbed wire fence.

### I. STANDARD OF REVIEW

We review a summary judgment order de novo, engaging in the same inquiry as the superior court. *Retired Pub. Emps. Council v. Charles*, 148 Wn.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is appropriate only if the pleadings, affidavits, depositions, interrogatories, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In reviewing a summary judgment, we consider all facts and reasonable inferences in the light most favorable to the non-moving party. *Wagg v. Estate of Dunham*, 146 Wn.2d 63, 67, 42 P.3d 968 (2002); *Wilson*, 98 Wn.2d at 437. A non-moving party, however, "may not rely on speculation, argumentative assertions that

9

unresolved factual issues remain, or [o]n having [his] affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Where the facts in an adverse possession case are not in dispute, whether the facts constitute adverse possession is for the court to determine as a matter of law. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 758, 774 P.2d 6 (1989).

Additionally, we will not reverse a superior court's ruling on a motion to reconsider absent a "'clear or manifest abuse of . . . discretion.'" *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 203, 810 P.2d 31 (1991) (quoting *Holaday v. Merceri*, 49 Wn. App. 321, 324, 742 P.2d 127 (1987)). An abuse of discretion exists "'only if no reasonable person would have taken the view [that the superior court] adopted.'" *Meridian Minerals Co.*, 61 Wn. App. at 203-04 (quoting *Holaday*, 49 Wn. App. at 324).

## II. ADVERSE POSSESSION

To establish a claim of adverse possession, the claimant must provide evidence that his possession was (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *ITT Rayonier, Inc.*, 112 Wn.2d at 757 (citing *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984)). Possession of the property with each of these necessary concurrent elements must have existed for the statutorily prescribed 10-year period. RCW 4.16.020; *ITT Rayonier*, 112 Wn.2d at 757. Because the presumption of possession is in the holder of legal title, the party claiming to have adversely possessed the property has the burden of establishing the existence of each element. *ITT Rayonier*, 112 Wn.2d at 757.

The Larsons do not dispute that the Matthews exclusively possessed a portion of their (the Larsons') land for the 10-year statutory period or that such possession was actual and

uninterrupted;[12] rather, they dispute the location of that portion. Thus, we focus on the "open and notorious" and "hostile" elements of the Matthews' adverse possession claim as they relate to the location of the claimed adversely possessed property, namely (1) the Matthews' mowed backyard extending from their true southern property line south to the Larsons' tree line and (2) the Larsons' land extending further south from the tree line to the barbed wire fence.

### A. Mowed and Landscaped Backyard

The Matthews contend that they produced evidence demonstrating that their possession of the mowed backyard area of the disputed property was open and notorious, and hostile, sufficient to merit summary judgment that they adversely possessed this area. The Matthews are correct that Washington courts consider the nature, character, and location of the property when determining both the "open and notorious" and "hostile" elements. *Anderson v. Hudak*, 80 Wn. App. 398, 403, 907 P.2d 305 (1995); *Frolund v. Frankland*, 71 Wn.2d 812, 817, 431 P.2d 188 (1967), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. But "use alone," the Matthews' primary argument in support of the location of the property they claim, "does not necessarily constitute possession" for adverse possession purposes. *ITT Rayonier*, 112 Wn.2d at 759 (citing *Wood v. Nelson*, 57 Wn.2d 539, 540, 358 P.2d 312 (1961)).

Furthermore, the element of "notice" is important where, somewhat analogous to the circumstances here, the land is "wild country, broken, mountainous, very sparsely settled, and *a*

---

[12] In their brief of respondent, the Larsons appear to challenge the Matthews' ability to show the "actual and uninterrupted" element of adverse possession; but the cases they cite either involve the "hostility" element or do not expressly discuss the "actual and uninterrupted" element. Br. of Resp't at 19-20 (citing *Roy v. Goerz*, 26 Wn. App. 807, 813-14, 614 P.2d 1308 (1980), *overruled on other grounds by Chaplin*, 100 Wn.2d 853; and *Mesher v. Connolly*, 63 Wn.2d 552, 557-58, 388 P.2d 144 (1964)).

11

*small portion of it may be taken and held for years without [anyone] knowing whether there was a trespass or not." Murray v. Bousquet*, 154 Wash. 42, 49, 280 P. 935 (1929) (emphasis added). A claimant asserting adverse possession over such land must show that he possessed the property with such notoriety that the true owner "'may be presumed to have notice of it and its extent.'" *Bousquet*, 154 Wash. at 50 (emphasis omitted) (quoting 3 GEORGE W. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 2520 (1924)):

### 1. "Open and notorious"

The "open and notorious" element of adverse possession requires proof that (1) the true owner had actual notice of the adverse use throughout the statutory period, or (2) the claimant used the land in a way that would lead a reasonable person to assume the claimant was the owner. *Shelton v. Strickland*, 106 Wn. App. 45, 51-52, 21 P.3d 1179 (2001). The necessary occupancy and use need only be of the character that a true owner would assert in view of the property's nature and location. *Anderson*, 80 Wn. App. at 403.

The Matthews produced evidence that, as early as 1980, when they purchased the Altoona-Pillar Rock Road property from Carol and Dennis, their property's backyard was "mowed" all the way to the tree line on the Larsons' land and that the Matthews were told this

mowed area was "definitely the yard" of their property.[13] CP at 139. The Matthews continued to mow and to maintain this area of the Larsons' land.

At various points the Matthews gradually improved this mowed area by adding a chicken coop/shed, in 1980 or 1981; by planting two rhododendrons, sod grass, flowers, and shrubs; and by maintaining a drain that traversed the area. Although the record does not state precisely when the Matthews completed these landscaping improvements, their depositions reflect that they made the improvements over the course of a 28-year period (1980 to 2008), from when they first purchased the Altoona-Pillar Rock Road property to when the Larsons removed the landscaping in 2008. By at least 2006, the Matthews' landscaping in this mowed area was obvious enough that (1) Germunson noted the landscaping on his survey diagram as the "edge of [the] mowed area and shrubs"; (2) he spoke with the Matthews about their landscaping improvements, which he perceived as theirs; and (3) the Larsons observed this landscaping when they walked their land shortly thereafter. CP at 13. Thus, it is possible that, at some point during this 28-year period, the Matthews' landscaping improvements became "open and notorious" and that the Matthews thereby possessed this area for the requisite 10-year statutory period.

---

[13] The Matthews' predecessors, Carol and Dennis, had expanded their backyard across their south property line onto Raistakka's land to the south before 1980. But Carol and Dennis rented the property to two tenants between 1975 and 1980, before they would have completed their own 10-year period of adverse possession. Although a tenant's use of the land generally inures to the benefit of the original adverse possessor who leased the property to the tenant, the record here does not include any evidence about how Carol and Dennis' tenants used the disputed property. *See e.g., O'Brien v. Schultz*, 45 Wn.2d 769, 782, 278 P.2d 322 (1954), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. Because the record does not contain evidence of the tenants' use of the property, Carol and Dennis' period of possession cannot be tacked on to the Matthews' for purposes of establishing the Matthews' 10-year statutory adverse possession period. *See Muench v. Oxley*, 90 Wn.2d 637, 643, 584 P.2d 939 (1978), *overruled on other grounds by Chaplin*, 100 Wn.2d 853.

Nevertheless, the Larsons contend that the Matthews did not openly and notoriously possess this portion of the disputed property based on their planting trees. Br. of Resp't at 20. The Larsons are correct that planting trees without maintaining or cultivating them is not generally "open and notorious" use. *See Anderson*, 80 Wn. App. at 404-05. But the Matthews produced evidence that they did more than merely plant rhododendrons and shrubs: They cultivated the land in their expanded backyard, mowed it, and made various improvements such as building the chicken coop that protruded partly onto the Larsons' land. Washington courts have held that similar use is sufficient to establish the "open and notorious" element of adverse possession. *See e.g., Riley v. Andres*, 107 Wn. App. 391, 397, 27 P.3d 618 (2001); *Lingvall v. Bartmess*, 97 Wn. App. 245, 254-55, 982 P.2d 690 (1999). Considering the facts and inferences in the light most favorable to the Matthews, we conclude that they produced evidence sufficient to defeat summary judgment for the Larsons and to raise a genuine issue of material fact about whether the Matthews' landscaping in this mowed "backyard extension" area was "open and notorious" for the required 10-year period.

### 2. "Hostile"

The "hostile" element of adverse possession requires "only that the claimant treat the land as his own against the world throughout the statutory period." *Chaplin*, 100 Wn.2d at 860-61. The nature of the claimant's possession is determined by objectively examining the manner in which he treated the property; his subjective belief about his true interest in the land and his intent to dispossess or not dispossess are irrelevant. *Chaplin*, 100 Wn.2d at 861; *Lingvall*, 97 Wn. App. at 254.

14

Similar to the Matthews' production of some evidence that their possession of the mowed area of the Larsons' land was "open and notorious," they also produced sufficient evidence to raise an issue of material fact about whether their possession of this mowed area was "hostile": They planted rhododendrons, sod grass, shrubs, and flowers in their backyard; and they regularly maintained the landscaping in this area and mowed the lawn. In *Lingvall*, we held that such planting trees, landscaping, mowing, and maintaining the area of land around the trees was sufficient to demonstrate the hostility element, even in the absence of a border fence. *Lingvall*, 97 Wn. App. at 254. Thus, we conclude that the Matthews produced evidence creating a genuine issue of material fact about whether their possession of this mowed lawn area of the disputed property was "hostile" for the required 10-year statutory period, sufficient to defeat summary judgment for the Larsons.

Considering the facts and reasonable inferences in the light most favorable to the respective non-moving parties, we hold that (1) the Matthews have raised a genuine issue of material fact about whether their possession of their mowed backyard (extending from their southern property line to the Larsons' tree line) was open and notorious, and hostile for the required 10-year statutory period sufficient to defeat summary judgment for the Larsons on this portion of the Matthews' adverse possession claim; (2) the superior court erred in granting the summary judgment to the Larsons and in denying the Matthews' motion for reconsideration of this portion of the adverse possession claim; (3) this same genuine issue of material fact about the Matthews' possession of their mowed backyard, however, also defeats their CR 56 motion for summary judgment on their adverse possession claim. Therefore, with respect to the

Matthews' claim of adverse possession of their mowed backyard, we reverse summary judgment to the Larsons in part, and we affirm denial of summary judgment to the Matthews.[14]

### B. Barbed Wire Fence and Forest Land

The Matthews also argue that the superior court erred in granting summary judgment to the Larsons and in denying their counter motion for summary judgment on their (the Matthews') adverse possession claim to the land extending from the Larsons' tree line to the barbed wire fence. We disagree. The barbed wire fence no longer exists, it was never built or maintained by the Matthews or their predecessors, and the fence's precise location was never clearly defined when it was in existence. Even assuming, without deciding, that the Matthews could establish their actual possession of the barbed wire fence and the surrounding forest land and that such possession was "hostile," the Matthews' adverse possession claim for this area of the disputed property fails because they have not produced evidence sufficient to demonstrate that their possession of this part of the Larsons' land was "open and notorious."

The Washington Supreme Court rejected a similar adverse possession claim where a party tried to claim adverse possession of land up to an old boundary fence that (1) at the time he took possession of the property, "was in a dilapidated condition and the ground on either side was heavily covered by trees and underbrush"; (2) was so dilapidated that a surveyor ignored it; and (3) was never maintained in a manner that would impart notice of his adverse possession. *Muench v. Oxley*, 90 Wn.2d 637, 639, 642-43, 584 P.2d 939 (1978), *overruled on other grounds by Chaplin*, 100 Wn.2d 853. The Court reasoned that, under such circumstances, the claimant

---

[14] Nothing in this opinion, however, affects the superior court's decision to grant the Matthews adverse possession of the area occupied by the chicken coop/shed.

16

failed to show the "open and notorious" element because he was not in "such possession as would put a person of ordinary prudence on notice of a hostile claim." *Muench*, 90 Wn.2d at 642.[15]

As in *Muench*, when the Matthews and their predecessors took possession of the Altoona-Pillar Rock Road property, the barbed wire fence on the Larsons' land was already in a dilapidated state and located within a densely forested area overgrown with trees and brush. Neither the Matthews nor their predecessors built the barbed wire fence, cleared the land around it, or repaired or maintained it in a manner consistent with asserting ownership of it and imparting notice of a hostile claim to the fence and the surrounding forest land. Nor did the Matthews produce evidence that they ever attempted to exclude others from the Larsons' forest land; on the contrary, the Matthews openly admitted that they had frequently crossed over the fence to view elk on the Larsons' property.

Even assuming the barbed wire fence existed in the approximate location that the Matthews assert, this fence and the Matthews' alleged "use" of the Larsons' surrounding forest land (e.g., creating compost piles, depositing weeds and plant clippings, etc.) was apparently so

---

[15] We note that the Supreme Court reached an apparently different conclusion in *Wood*, where a dilapidated fence had been in place for more than 10 years and, although no one knew when or by whom it was built, the claimant had occasionally cut wild grass up to the fence line. *Wood*, 57 Wn.2d at 539-40. The *Wood* Court stated that, although such "limited use" would not ordinarily establish adverse possession, the ultimate question was the "indication of possession," or the exercise of dominion and control characteristic of ownership. *Wood*, 57 Wn.2d at 540 (emphasis omitted). Because both parties in *Wood* had recognized the dilapidated fence as a boundary "line fence" and the fence was effective in excluding the abutting owner from the unused part of the tract, the Court held that the fence constituted "prima facie evidence of hostile possession up to the fence." *Wood*, 57 Wn.2d at 541. Such are not the circumstances in the case before us here.

unobtrusive that surveyor Germunson did not notice either the fence or the use when he surveyed the Larsons' land; nor did he note either on his survey diagram. Forester Bressler similarly did not notice a barbed wire fence or any discernible use in the forest area when he inspected the Larsons' land before issuing them a logging permit.

Furthermore, the Matthews provided no clear evidence that any of their alleged "uses" of the disputed property actually occurred in the forest area surrounding the barbed wire fence, as opposed to in the mowed area to the north of the forest that they had used as an extension of their backyard. In contrast, this mowed backyard use was obvious enough that Germunson noted it on his survey diagram.

Even considering the facts and reasonable inferences in the light most favorable to the Matthews, we hold that (1) they failed to raise an issue of material fact about whether their possession of the disputed area extending south from the Larsons' tree line to the former barbed wire fence was "open and notorious" such that it would have put a person of ordinary prudence on notice of a "hostile" claim; and (2) based on the undisputed facts, the Larsons are entitled to judgment as a matter of law for this disputed area. Therefore, we affirm the superior court's grant of summary judgment to the Larsons on this portion of the Matthews' adverse possession claim, denial of summary judgment to the Matthews on this claim, and denial of the Matthews' motion for reconsideration of these rulings.

CONCLUSION

Addressing separately the two portions of the contested land, we affirm in part and reverse in part. We hold that there is no genuine issue of material fact about whether the Matthews adversely possessed the Larsons' land extending south from the tree line to the former

18

barbed wire fence; thus, we affirm the superior court's grant of summary judgment to the Larsons and its denial of summary judgment to the Matthews on the Matthews' adverse possession claim of this area. We further hold that there is genuine issue of material fact about whether the Matthews adversely possessed the mowed and landscaped portion of the Larsons' land extending south from the Matthews' true southern property line to the Larsons' tree line; thus, we affirm the superior court's denial of summary judgment to the Matthews, we reverse the superior court's grant of summary judgment to the Larsons on the Matthews' adverse possession claim of this area, and we remand for trial on this latter claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Johanson, A.C.J.

Bjorgen, J.