2013 JUN 10 AM 9: 23

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JAMES A. CHASE and JUDY CHASE, ) <br> and the marital community ) <br> compromised thereof, ) <br> ) <br> Respondents, ) <br> ) <br> v. ) <br> ) <br> JAMES EBELING, JR., ) <br> ) <br> Appellant. ) | No. 68439-6-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION <br><br><br><br> FILED: June 10, 2013 |

SCHINDLER, J. — James and Judy Chase (Chase) filed an action to quiet title and ejectment. James Ebeling, Jr. counterclaimed, alleging adverse possession of the disputed property. The trial court rejected the claim of adverse possession and quieted title in Chase. Because the admissible evidence established that some of the possession and use of the disputed property was permissive, we affirm.

## FACTS

As children, James Chase and David Parkinson were best friends and lived in the same neighborhood for approximately 10 years. Chase and Parkinson lost contact after the two families moved away.

Parkinson's parents purchased property in Auburn, Washington. In 1983, Parkinson's mother Carmen Hammons conveyed 1.25 acres of the property to

Parkinson. With Hammons' permission, Parkinson installed a chain link fence along the southern edge and eastern edge of his property to separate his large dog from Hammons' horse pasture. The fence had a gate that allowed Hammons and Parkinson to access each other's property. With Hammons' permission, Parkinson built a storage shed near the fence line.

Hammons' property was served by a well. In 1996, Parkinson entered into a covenant to protect the water supply to his mother's parcel. The covenant prohibits the owner of the subservient parcel from constructing or maintaining a sewer line or septic tank within 100 feet of the well on Hammons' property.

In 1996, Hammons decided to sell her property. At the same time, Chase had decided to buy property in rural King County. When Chase came to see Hammons' property, he was delighted to discover that the owner was the mother of his childhood friend Parkinson, and that Parkinson was living next door. Chase purchased the property in July 1996.

After Chase moved in, he gave Parkinson permission to use his property "the same as he had with his mother."

A     David had some equipment, he had some personal belongings.
His brother had some couches. They were stored in our barn, and
that was okay. I felt close to the Parkinson family.

Q     So because Mr. Parkinson had this property, you went and spoke
to him, what did you say to him?

A     I let him know -- and being aware of how close he was to his
mother, I let him know that we were okay, I was fine, his use of the
property could continue just as it had with his mother. I was great --
I was delighted that I had found [my] friend, David, and let him
know that we were all cool. . . . I wanted him to know everything
was all right, and he had my permission to continue --this is where
he grew up from the time he was fourteen.

Q     So he had your permission to --

. . . .

2

A    He had my permission to use my property the same as he had with his mother. I didn't care where fences were between David and I, he was like family, their family was.

Over the next three years, Parkinson and Chase freely accessed each other's parcels, and jointly maintained and used property on both sides of the fence.

James Ebeling, Jr. purchased the property from Parkinson on November 24, 1999. Initially, Chase had a cordial relationship with Ebeling, but eventually disputes arose over Ebeling's use of the property located near the well. Ebeling parked his motor home near the fence. Chase was concerned about the discharge of sewage and water from the motor home and about storage of chemicals within 100 feet of the well.

Toward the end of 2008, Chase obtained a survey of the property. The survey shows that the chain link fence is located on Chase's property about 40 feet away from the boundary between Chase's and Ebeling's property.

On October 12, 2009, Chase filed an action to quiet title and for ejectment. Chase also alleged that Ebeling breached the restrictive covenant.[1] Ebeling filed a counterclaim to quiet title in the disputed area. Ebeling claimed adverse possession of the disputed strip of property.

During the bench trial, James Chase and Ebeling both testified and the court admitted Hammons' deposition testimony into evidence. The trial court ruled that Parkinson's use of Hammons' property and then later of Chase's property was permissive. The court's findings of fact state, in pertinent part:

> After the Chases moved in, Mr. Chase spoke with Mr. Parkinson about their relationship as neighbors. Mr. Chase told Mr. Parkinson that, given their life-long and newly rediscovered friendship, he was fine with continuing whatever arrangement Mr. Parkinson had with his mother, Ms.

---

[1] Chase later filed an amended complaint adding a claim for nuisance, but it appears they later abandoned this claim.

Hammons, as to their respective uses of each other's property. Accordingly, Mr. Chase and Mr. Parkinson agreed that each had the other's permission to use any part of the other's property.

The trial court's conclusions of law state, in pertinent part:

1. Use of the Disputed Parcel by David Parkinson, counterclaim defendant James Ebeling Jr.'s predecessor in interest to the Ebeling Property, was with the permission of the true owner and thus was permissive.

2. Mr. Ebeling owned the Ebeling Property and thus used and possessed the Disputed Parcel for less than 10 years prior to initiation of this quiet title and ejectment action by the true owners, plaintiffs James and Judy chase.

3. Because use of the Disputed Parcel by his predecessor in interest was permissive, and because Mr. Ebeling's own use and possession of the Disputed Parcel was for less than 10 years, Mr. Ebeling does not and cannot satisfy the "hostile" element of his adverse possession claim for the requisite 10 year period.

Ebeling appeals.

ANALYSIS

Ebeling challenges the trial court's finding that Chase gave Parkinson permission to use his property.[2] Ebeling claims that, apart from inadmissible hearsay, the finding is unsupported by substantial evidence in the record.

Following a bench trial, appellate review is limited to determining whether the trial court's factual findings are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law and judgment. Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth

---

[2] Ebeling assigns error to several other findings of fact, conclusions of law, and trial court rulings. We do not, however, consider assignments of error that are unsupported by legal argument and relevant authority. RAP 10.3(a)(6); Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).

4

of the declared premise." Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

To establish ownership by adverse possession, Ebeling had to show possession for 10 years that was (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. Chaplin v. Sanders, 100 Wn.2d 853, 857, 676 P.2d 431 (1984); ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989); RCW 4.16.020. Because the presumption of possession is in the holder of legal title, the party claiming to have adversely possessed the property has the burden of establishing the existence of each element. ITT Rayonier, 112 Wn.2d at 757.

Ebeling concedes that he did not own his property for 10 years. Therefore, he seeks to "tack" the use of his predecessor in interest to establish adverse possession. Roy v. Cunningham, 46 Wn. App. 409, 413, 731 P.2d 526 (1986).

The "hostile" element of adverse possession requires that "the claimant treat the land as his own as against the world throughout the statutory period." Chaplin, 100 Wn.2d at 860-61. Permission from the true owner negates the hostility element. Chaplin, 100 Wn.2d at 861-62. Permission may be express or implied. Kunkel v. Fisher, 106 Wn. App. 599, 602, 23 P.3d 1128 (2001). Permission is implied in " 'any situation where it is reasonable to infer that the use was permitted by neighborly sufferance or acquiescence.' " Lingvall v. Bartmess, 97 Wn. App. 245, 251, 982 P.2d 690 (1999) (quoting Roediger v. Cullen, 26 Wn.2d 690, 707, 175 P.2d 669 (1946)). Permission may also be implied based on the existence of a close relationship between the parties. Granston v. Callahan, 52 Wn. App. 288, 294, 759 P.2d 462 (1988).

Ebeling concedes that the testimony that Chase expressly allowed Parkinson to use his property in the same manner as when his mother lived there, as well as Hammons' testimony that she gave permission to her son to use her property, defeats the element of hostility. However, Ebeling claims the testimony is inadmissible. Ebeling argues that Chase's testimony about his conversation with Parkinson is "classic hearsay" and not subject to any hearsay exception. Ebeling also argues the trial court erred in admitting Hammons' deposition testimony because the arrangement between mother and son was not relevant to show whether Parkinson's use was permissive after she sold the property.

The trial court admitted Chase's testimony about his conversation with Parkinson under the "state of mind" exception to the hearsay rule. Under this exception, a statement is not excluded as hearsay if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." ER 803(a)(3). The trial court also overruled Ebeling's objection to Hammons' deposition testimony, concluding that the evidence was relevant to permission, a material issue in the case.

This court reviews a trial court's decision to admit or refuse evidence for an abuse of discretion. Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997). A manifest abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. Crescent Harbor Water Co., Inc. v. Lyseng, 51 Wn. App. 337, 344, 753 P.2d 555 (1988).

Ebeling does not acknowledge that he also advocated for the admission of Parkinson's out-of-court statements and testified at trial about his own prior

conversations with Parkinson. Ebeling claimed that before he purchased the property in 1999, Parkinson pointed out the property boundaries and indicated that the southern boundary of the parcel was at the fence line. Ebeling argued, and the trial court agreed, that Parkinson's out-of-court statements about his understanding of the property boundaries were admissible under ER 803(a)(3) to show his state of mind and relevant to the issue of permission. Yet Ebeling offers no explanation as to why the same hearsay exception did not apply to Chase's testimony. The trial court was within its discretion in ruling that Chase's testimony was admissible to show his state of mind under ER 803(a)(3).[3]

With respect to Hammons' deposition testimony, Ebeling claims, as he did below, that the evidence was irrelevant because any permission granted by Hammons to her son was extinguished when she sold the property to Chase. However, as the trial court determined, the nature of the arrangement between Hammons and her son was relevant to the question of whether Parkinson's continued use after Chase purchased the property was permissive. The trial court did not abuse its discretion in admitting Hammons' testimony.

We conclude that the testimony at trial supports the trial court's finding that Chase granted Parkinson permission to use his property. This finding supports the trial court's legal conclusion that Parkinson's use of the disputed area was permissive. The court's unchallenged finding that Chase and Parkinson used both parcels communally during the period they resided as neighbors also supports the inference of permission and the conclusion of Parkinson's permissive use.

---

[3] The trial court ruled alternatively that the conversation between Chase and Parkinson was admissible as a "verbal act." Because we affirm the court's ruling under ER 803(a)(3), we do not address this alternative basis.

7

Finally, in his reply brief, Ebeling contends that even if Chase gave Parkinson permission to use his property in 1996, because he was not aware of the true property line at the time, the evidence does not support the inference that the grant of permission included the area that Chase did not know he owned. But, Chase testified that while he assumed the property line was at the fence line, because of his relationship with Hammons and Parkinson, he did not know and did not care where the actual boundaries were. Chase said that his intent in granting permission was not limited to a specific area, but extended to all of his property. He said he gave Parkinson permission to use all of his property: "[W]hat's mine is yours." Substantial evidence supports the court's determination that the permission encompassed the disputed area.

We affirm.

WE CONCUR:

8