[No. 8288–4–I.  Division One.  January 12, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID C. DOROSKY, *Appellant*.

*Neil Sarles,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Pamela Holliday, Deputy,* for respondent.

SWANSON, J.—The primary issue in this appeal relates to the juvenile court's refusal to modify a manifest injustice finding entered pursuant to RCW 13.40.160, following conviction of second degree burglary, first degree theft, and second degree attempted robbery charges. The juvenile court commissioner entered findings of fact which would support a modification of the previous manifest injustice finding on the basis that the defendant had rehabilitated himself. On the basis of these findings, the juvenile court concluded:

> The defendant no longer presents a substantial danger to society and this court would modify its manifest injustice disposition if it had the jurisdiction to do so.

Conclusion of law No. 1. The court then concluded that it did not have jurisdiction to reconsider or modify its disposition of the case at the present time. It is this conclusion— that the juvenile court lost jurisdiction to modify its earlier finding of manifest injustice—that forms the only significant issue on appeal.

In order to resolve this question, it is necessary to relate the factual history in chronological order:

1. May 15, 1979: David Dorosky was convicted in juvenile court of second degree burglary, first degree theft, and second degree attempted robbery.

2. June 15, 1979: Juvenile Court Commissioner Richey entered a finding of manifest injustice and committed Dorosky for a period of 9 months to the Division of Juvenile Rehabilitation of the Department of Social and Health Services.

3. Dorosky appealed the manifest injustice finding to the Court of Appeals via a motion for accelerated review. He contended (a) that a manifest injustice finding was inappropriate in his case, and (b) that the manifest injustice provisions of the Juvenile Justice Act of 1977 were unconstitutionally void for vagueness.

4. November 14, 1979: A commissioner of this court upheld the constitutionality of the manifest injustice law, found the reasons supporting the challenged finding were adequate, denied the motion for accelerated review, and dismissed the appeal.

5. December 11, 1979: Commissioner Richey conducted a hearing regarding Dorosky's motion to reconsider the manifest injustice finding.

6. December 13, 1979: The Court of Appeals issued its mandate formally terminating review of Dorosky's manifest injustice appeal.

7. December 19, 1979: Commissioner Richey entered findings of fact indicating that he would have modified his previous manifest injustice finding but could not do so for lack of jurisdiction.

8. December 19, 1979: Dorosky filed a notice of appeal seeking review of the denial by Richey of his motion for reconsideration.

9. April 8, 1980: Commissioner Richey issued an order extending juvenile court jurisdiction over Dorosky until his 21st birthday.

Dorosky argues on appeal that the juvenile court possesses inherent authority to modify a prior manifest injustice finding, citing *In re Lowe*, 89 Wn.2d 824, 576 P.2d 65 (1978), and *In re Gakin*, 22 Wn. App. 822, 592 P.2d 670 (1979), in support of this contention. We reject this argument. *Lowe* and *Gakin* were decided under prior juvenile court statutes that gave the court "broad power to make whatever orders are required for the child's welfare, . . ." *Lowe*, at 825. The Juvenile Justice Act of 1977 severely limited this traditional sweeping dispositional authority of the juvenile courts. *See* Becker, *Washington State's New Juvenile Code: An Introduction*, 14 Gonz. L. Rev. 289, 290–92, 307–08 (1979).

In addition, Dorosky argues that RAP 7.2(e) enabled the juvenile court to modify a manifest injustice finding. RAP 7.2(e) states in relevant part:

> The trial court has authority to hear and determine (1) post–judgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. *If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the entry of the trial court decision. A party should seek the required permission by motion.*

(Italics ours.)

In this case, because Commissioner Richey denied Dorosky's motion for reconsideration and modification of his manifest injustice finding, Dorosky requested permission of this court to adopt the trial court's findings of fact on the merits in a separate review, which is the subject of this appeal.

██ It is our view that RAP 7.2(e) is limited to cases *pending* in an appellate court and was not available to Dorosky in the posture of this case. RAP 7.2(e) contemplates a motion in the trial court and a subsequent motion made before this court which must occur *before* this court has decided the appeal. This court's dismissal of Dorosky's appeal by its commissioner on November 14, 1979, became final when the appellant's right to object to the commissioner's ruling expired 10 days later pursuant to RAP 17.7. After that date, an appeal was no longer pending in the Court of Appeals. The subsequent issuance of the mandate on December 13, 1979, served as written notification to the trial court and the parties of the decision to terminate review. RAP 12.5(a).[1] Review, however, had already terminated by the commissioner's ruling dismissing review. RAP

---

[1] RAP 12.9(b) allows an appellate court to

recall a mandate issued by it to correct an inadvertent mistake, to modify a decision obtained by fraud of a party or counsel in the appellate court, or to modify a decision of the appellate court which was beyond the jurisdiction of the court.

*See Reeploeg v. Jensen*, 81 Wn.2d 541, 547, 503 P.2d 99 (1972). None of the factors permitting recall of a mandate is present in the instant case. This question is

12.3. Appellant's efforts to obtain a trial court modification of its prior decision were not timely. An aggrieved party cannot appeal a lower court decision and wait until after a decision terminating review has been entered before applying to the lower court for a modification of the decision which the appellate court has ruled upon adversely to the aggrieved party. While RAP 7.2(e) clearly gives the trial court authority to hear and determine postjudgment motions, including actions to change or modify decisions, such modifications must either occur prior to the appeal or while the appeal is pending so that the appellate court can consider such changes or modifications prior to making a final decision.

■ Dorosky argues also that the juvenile court had authority under CR 60(b) to modify the prior manifest injustice finding. CR 60(b) reads in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (11) Any other reason justifying relief from the operation of the judgment.

Dorosky cites *State v. Scott,* 92 Wn.2d 209, 595 P.2d 549 (1979), in support of this contention. We find *Scott* inapplicable to this case. In *Scott,* CR 60(b)(11) was applied to the correction of erroneous judgments which resulted from inaccuracies in the presentation of facts known at the time the judgment was entered. CR 60(b)(11) is not applicable to cases like the present one in which facts are alleged to have changed after entry of judgment.[2]

---

made academic, however, by the fact that review had terminated by the commissioner's ruling before the mandate in the instant case was issued.

[2]A similar issue arose in *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.,* 68 Wn.2d 756, 415 P.2d 501 (1966). There the Supreme Court struck down the trial court's order vacating an earlier order which granted a new trial. This was because no appeal from the order granting a new trial was taken within

To conclude, the appellant's efforts to obtain review of the juvenile court's denial of appellant's motion for reconsideration and modification of its earlier decision were not timely in order to comply with RAP 7.2(e), and modification was not proper under CR 60(b)(11) as interpreted by *State v. Scott, supra.* Commissioner Richey was correct in concluding that he lacked jurisdiction either to reconsider or modify his earlier decision upon which review had been terminated.

We also find no error in the trial court's commitment of Dorosky to the Division of Juvenile Rehabilitation for a period of 9 months. The trial court committed Dorosky to 3 months for each of the charges of which he was convicted. Dorosky argues that two of the charges, second degree burglary and first degree theft, were committed in a single act and that, therefore, under RCW 13.40.180,[3] the court was required to limit the consecutive terms imposed to 150 percent of the term imposed for the most serious offense. Dorosky's sentence for the two charges, he argues, should have been 4 1/2 months rather than 6 months. We reject this argument. By their definitions, the crimes of second

---

the time allowed by the rules on appeal. The court said that the trial judge lost jurisdiction to change its order granting a new trial and rejected the argument that a court could vacate or modify its earlier order on the ground of correcting a mistake. The court said in *Marie's Blue Cheese Dressing, Inc.,* at page 759:

> The trial court could not correct its own error after the time for appeal from the entry of the order had expired. The order granting a new trial was final for all purposes except as to the trial court's jurisdiction to hear the case at the new trial thereof and matters relating thereto.

*See* Trautman, *Vacation and Correction of Judgments in Washington,* 35 Wash. L. Rev. 505, 515 (1960).

[3]RCW 13.40.180 provides in part:

"Where a disposition is imposed on a youth for two or more offenses, the terms shall run consecutively, subject to the following limitations: (1) Where the offenses were committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was an element of the other, the aggregate of all the terms shall not exceed one hundred fifty percent of the term imposed for the most serious offense; . . ."

degree burglary and first degree theft cannot be committed through a single act.[4]

Dorosky argues, finally, that the juvenile court improperly extended jurisdiction over him until his 21st birthday. RCW 13.40.300(1)(c) permits extension of juvenile court jurisdiction if prior to the juvenile's 18th birthday,

> Proceedings are pending seeking the adjudication of a juvenile offense or seeking an order of disposition and the court by written order setting forth its reasons extends jurisdiction of juvenile court over the juvenile beyond his or her eighteenth birthday.

The record shows that Dorosky became 18 years of age on May 10, 1980. On April 8, 1980, Commissioner Richey issued his order extending juvenile court jurisdiction over Dorosky until his 21st birthday. The order was accompanied by the following finding of fact:

> That jurisdiction . . . over [Dorosky] . . . should be extended . . . solely in order to afford the Court of Appeals full opportunity to hear and decide the pending appeal.

We conclude that this order complied with the requirements of RCW 13.40.300(1)(c).

---

[4] "A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle." RCW 9A.52.030(1).

"(1) 'Theft' means:

"(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

"(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services." RCW 9A.56.020(1).

Judgment affirmed.

WILLIAMS and ANDERSEN, JJ., concur.

Reconsideration denied March 11, 1981.

Review granted by Supreme Court May 22, 1981.

Review dismissed October 9, 1981.