COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| MARK HIRST and MAUREEN HIRST, husband and wife, | ) ) ) | No.    36827-1-III |
| Appellants, | ) ) | ORDER GRANTING APPELLANTS' MOTION FOR RECONSIDERATION |
| v. | ) ) | AND AMENDING OPINION, DENYING APPELLANTS' |
| MARTIN BUDDE and KIMBERLYN BUDDE, husband and wife, | ) ) ) | MOTION TO PUBLISH, AND DENYING RESPONDENTS' MOTION FOR |
| Respondents. | ) | RECONSIDERATION |

THE COURT has considered the appellants' motion for reconsideration of our opinion filed January 19, 2023, as previously amended by this court's order amending opinion filed January 24, 2023.

IT IS ORDERED, the appellants' motion for reconsideration is granted and the opinion shall be amended as follows:  The paragraphs on page 2 that read:

> Maureen and Mark Hirst purchased a Newman Lake parcel of land in 2003.  In 2004, Martin and Kimberlyn Budde purchased and moved onto the adjacent property.  When the Buddes purchased their parcel, Martin Budde saw a line of ribbons which he believed delineated the eastern boundary adjoining the Hirst property.
>
> When Martin and Kimberlyn Budde moved onto their parcel, the family stored belongings in a sea container, which they rested in an area north of their residence referred to by the family as the "'bench area.'"

shall be amended to read:

>    Maureen Hirst purchased a Newman Lake parcel of land in 2003. She later married Mark Hirst and, in 2009, Mark moved onto Maureen's property. In 2004, Martin Budde purchased and moved onto the adjacent property. He later married Kimberlyn Budde and she moved onto Martin's property in 2012. When Martin Budde purchased his parcel, he saw a line of ribbons which he believed delineated the eastern boundary adjoining the Hirst property.
>    When Martin Budde moved onto his parcel, his family stored belongings in a sea container, which they rested in an area north of their residence referred to by the family as the "'bench area.'"

THE COURT has also considered the appellants' motion to publish the court's opinion, and is of the opinion the motion to publish should be denied. Therefore,

IT IS ORDERED, the appellants' motion to publish is denied.

THE COURT has also considered the respondents' motion for reconsideration of our opinion filed January 19, 2023, as previously amended by this court's order amending opinion filed January 24, 2023, and is of the opinion the motion for reconsideration should be denied. Therefore,

IT IS ORDERED, the respondents' motion for reconsideration is denied.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_____
LAUREL H. SIDDOWAY, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARK HIRST and MAUREEN HIRST, husband and wife, | ) ) ) | No. 36827-1-III |
| Appellants, | ) ) | |
| v. | ) ) | ORDER AMENDING OPINION |
| MARTIN BUDDE and KIMBERLYN BUDDE, husband and wife, | ) ) ) ) | |
| Respondents. | ) | |

IT IS ORDERED the opinion filed January 19, 2023, is amended as follows:

The first full paragraph on page 33 that reads:

We affirm the superior court award of property to Martin and Kimberlyn Budde. We also affirm the superior court's grant of reasonable attorney fees and costs to the Buddes. We grant the Buddes reasonable attorney fees and costs incurred on appeal.

shall be amended to read:

We affirm the superior court award of property to Martin and Kimberlyn Budde. We also affirm the superior court's grant of reasonable attorney fees and costs to the Buddes. We deny the Buddes reasonable attorney fees and costs on appeal.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_____
LAUREL H. SIDDOWAY, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARK HIRST and MAUREEN HIRST, husband and wife, | ) ) ) | No. 36827-1-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MARTIN BUDDE and KIMBERLYN BUDDE, husband and wife, | ) ) ) | |
| Respondents. | ) ) | |

FEARING, J. — In this adverse possession suit, the title owners to the disputed territory appeal the superior court's quieting of title to the adverse possessor and the award of reasonable attorney fees and costs to the adverse possessor. Because ample evidence supports the grant of adverse possession, we affirm the superior court's substantive ruling. Because the adverse possessor timely sought an award of reasonable attorney fees and costs and the superior court did not abuse its discretion when awarding fees, we affirm the award of fees and costs.

FACTS

We glean the facts primarily from the superior court's findings of fact. The trial concerned the defendants Martin and Kimberlyn Budde's quest to gain title by adverse possession to a section of plaintiffs Mark and Maureen Hirst's parcel of land. The two

couples are neighbors. For illustrative purposes only, we place a diagram of the two parcels at the end of our narration of facts.

Maureen and Mark Hirst purchased a Newman Lake parcel of land in 2003. In 2004, Martin and Kimberlyn Budde purchased and moved onto the adjacent property. When the Buddes purchased their parcel, Martin Budde saw a line of ribbons which he believed delineated the eastern boundary adjoining the Hirst property.

When Martin and Kimberlyn Budde moved onto their parcel, the family stored belongings in a sea container, which they rested in an area north of their residence referred to by the family as the "'bench area.'" Clerk's Papers (CP) at 137. Commencing in 2005, Martin Budde and his daughters sawed trees and brush in the bench area in order to clear the area and to procure fuel for a fireplace and wood stove. The Budde daughters also camped and drove four-wheel vehicles in the bench area.

Martin Budde desired a recreational vehicle campground in the cleared bench area. In 2007, Budde completed a road to the prospective campground. The parties call the road the "'[l]oop [r]oad'" or "'gravel road.'" CP at 139. The Hirsts took no step to prevent Budde's construction of the loop road.

Maureen Hirst desired a venue for weddings and other events in an area referenced "'Maureen's Meadow.'" CP at 140. At Hirst's request, Martin Budde helped ready the venue for Hirst's nephew's wedding in 2008. Both the Budde and Hirst families hosted events at Maureen's Meadow thereafter.

2

In 2008, Martin Budde constructed a zipline north of the Budde dwelling. Both the Budde and Hirst families used the zipline. In 2013, Martin Budde constructed a shop building where the sea container once rested. Mark Hirst asked Budde whether the shop sat too close to the property line. Budde responded in the negative. Hirst accepted this answer.

The placid, sylvan neighborhood ceased in 2015. That year the Hirsts hosted numerous weddings at Maureen's Meadow. This activity disappointed the Buddes, who objected to the Hirsts operating a wedding business. We do not know why one could operate a recreational vehicle campground in the pastoral setting, but not a wedding venue. In response, the Buddes barred use of the loop road for access to Maureen's Meadow. Every action causes a reaction. The Hirst family constructed a wooden fence to block the Buddes from accessing Maureen's Meadow. The fence's orientation aligned with Martin Budde's imagined property line and did not encroach into the recreational vehicle campground. The Hirsts nailed "'No Trespassing'" signs aimed at the campground. CP at 142.

In 2016, Mark and Maureen Hirst ordered a survey which revealed that the true property line traversed the Buddes' recreational vehicle campground and shop building. The Hirsts dutifully constructed a new fence along the surveyed line. The latest fence line blocked the Buddes' access to one side of the shop and a portion of the campground. The parties then disputed whether the Buddes adversely possessed the land between the

3

true survey and the line where Martin Budde first saw the ribbons. We refer to this area as the disputed territory.

During a bench trial, Maureen Hirst testified that neighbors, other than the Hirsts and the Buddes, used the disputed territory for hiking, riding horses, and operating four-wheel vehicles. Hirst averred that she hiked and snow-shoed on the disputed land. Martin Budde testified that he had once constructed a zip line near another neighbor's property and then discovered that the zip line structure encroached on the neighbor's property line.



PROCEDURE

Mark and Maureen Hirst filed suit against Martin and Kimberlyn Budde. The Hirsts alleged negligent trespass, intentional trespass, conversion, civil harassment, easement by prescription, easement by necessity, promissory estoppel, and unjust enrichment. The Buddes asserted counterclaims of adverse possession, mutual recognition and acquiescence, and estoppel. The Buddes asked the superior court to quiet title in the disputed territory in their name.

The parties attempted mediation without success. The Buddes moved for another session of court-ordered mediation. The court denied the motion on the insistence of the Hirsts that mediation would be unsuccessful.

At the conclusion of trial on March 12, 2019, the superior court rendered an oral ruling. The ruling granted Martin and Kimberlyn Budde's adverse possession claim to the disputed territory, awarded Mark and Maureen Hirst an easement across a southern road to access their property, and ordered the Hirsts to remove fencing on the property awarded to the Buddes. The court also dismissed the Hirsts' trespass claims. As part of the oral ruling, the superior court commanded a survey to create a legal description for the disputed territory quieted in Martin and Kimberlyn Budde.

During a presentment hearing on May 7, 2019, the superior court entered an order that awarded the disputed territory to Martin and Kimberlyn Budde and generally identified the area, for purposes of a survey, awarded to them. The order read:

4.1. It is hereby ORDERED, ADJUDGED and DECREED that the Buddes are awarded title to the disputed lands as such may be determined by land survey in substantial conformity with the court's findings and conclusions herein, and with reference to the attached Exhibit "A"; the legal description of the parties' adjusted property boundaries, and the parties' adjusted common property boundary line, to be added by supplemental order of the court following completion of a new survey.

4.2. It is hereby ORDERED, ADJUDGED and DECREED that the property be re-surveyed to include a cutoff from just below the gravel road, or "Loop Road", and travel out far enough to include the RV campground area and the "bench area' that was claimed in adverse possession by the Buddes. The new line will travel up that portion to the end of the property and will run far enough to the east to match up with the area that "narrows" between the trees where Maureen's Meadow was accessed. The new property line will run between the "Loop Road" (gravel road) and the existing "Logging Road", as indicated on the attached Exhibit "A".

CP at 147-48. Exhibit A is the diagram we copy at the end of our factual narrative.

A proposed order prepared by Martin and Kimberlyn Budde included a paragraph concerning attorney fees that declared:

4.7. The court retains jurisdiction to consider all questions relating to an award of attorneys' fees and litigation-related costs.

CP at 122. During the May 7 presentment hearing, Mark and Maureen Hirst objected to paragraph 4.7 because the superior court had not mentioned an award of fees during its oral ruling. The superior court then struck section 4.7 from the signed order. The superior court commented:

I did cross off on the last page, though, 4.7, and I'll await further motions if there's an issue, okay?

Report of Proceedings (RP) (May 7, 2019) at 5.

7

At a hearing on May 17, 2019, the superior court accepted Martin and Kimberlyn

Budde's offer to pay the entire cost of the survey to be completed by their chosen

surveyor, Jim Main. The court told the parties to return with any disputes arising from

the survey.

During the May 17 hearing, the trial court remarked:

> as of today, the Court believes . . . that now it's just clean up of what
> the judgment is, your time for appealing has started. So we don't have to
> wait until the survey is done and all of that. The Court made the ruling. So
> the appeal time would start.

RP (May 17, 2019) at 28.

On May 16, 2019, Mark and Maureen Hirst appealed from the May 8, 2019 order

and judgment. Notice of appeal, No. 36827-1-III (Wash. Ct. App. May 16, 2019). The

notice of appeal began a convoluted process of activity in both this court of appeals and

the superior court. We detail this process because of its relevance to the question of the

timeliness of Martin and Kimberlyn Budde's request to the superior court for an award of

reasonable attorney fees and costs.

On June 5, 2019, The Hirsts also filed, in the superior court, a motion to stay

superior court proceedings. The superior court stayed any enforcement of its orders

pending appeal but instructed the parties to continue to survey the disputed property.

On June 27, 2019, Martin and Kimberlyn Budde filed a notice of presentment

proposing that the superior court adopt Jim Main's completed survey and quiet title to the

8

land described in the survey. On August 30, 2019, the superior court conducted a hearing with Main as a witness and allowed both parties to examine the surveyor. Mark and Maureen Hirst argued that the surveyor had awarded excessive land north of the recreational vehicle campground to the Buddes. The superior court agreed and directed Main to amend his survey to include only that portion of the property north of the recreational vehicle campground that extended to the zip line.

On October 30, 2019, Martin and Kimberlyn Budde's counsel wrote a letter to this appellate court's clerk. The letter asserted that the May 8 judgment was not final or appealable because the parties awaited a final legal description for the property awarded to the Buddes. Letter from David P. Boswell to Renee S. Townsley, No. 36827-1-III (Wash. Ct. App. Oct. 30, 2019). This court stayed the appeal pending the entry of a final order in the superior court. Ruling Staying, No. 36827-1-III (Wash. Ct. App. Nov. 8, 2019). This order of stay read:

> All due dates are suspended. The Hirsts are directed to present a final order to the Superior Court for signature, then file a RAP 7.2(e) motion in the Court of Appeals to obtain permission to file the final order in the Superior Court.

In a May 19, 2020 status report submitted to this reviewing court, Mark and Maureen Hirst asserted that the May 8, 2019 order constituted the trial court's final judgment and the Court of Appeals should not have entered a stay. Status Report, No. 36827-1-III (Wash. Ct. App. Feb. 20, 2020); Status Report, No. 36827-1-III (Wash. Ct.

App. May 19, 2020). Nevertheless, the Hirsts advanced no formal motion to lift the stay. On May 22, 2020, this court's clerk entered a notation ruling extending the stay in this court until July 6, 2020.

On June 2, 2020, Mark and Maureen Hirst moved the superior court to incorporate the results of Jim Main's second survey into the quiet title order. On June 22, in response to appellate filings, this court lifted the stay of appellate proceedings and ordered the submission of briefing. Ruling Amending Stay, No. 36827-1-III (Wash. Ct. App. June 22, 2020). The lifting of the stay may have conflicted with this court's initial stay order, which directed the Hirsts to "present a final order to the Superior Court for signature, then file a RAP 7.2(e) motion in the Court of Appeals to obtain permission to file the final order in the Superior Court." Ruling Staying, No. 36827-1-III (Wash. Ct. App. Nov. 8, 2019). No party challenged this court's June 22 order lifting the stay.

On June 25, 2020, the superior court presided over a presentment hearing about incorporation of Jim Main's amended survey. Martin and Kimberlyn Budde's counsel broached the issue of attorney fees.

> MR. BOSWELL [the Buddes' counsel]: One point of clarification, Your Honor.
> . . . .
> MR. BOSWELL: As I read the notation ruling from the Court of Appeals from November the 8th, Mr. Diener [Mark and Maureen Hirst's counsel] and the Hirsts were ordered to present that final order, and be that as it may, they were, also, ordered—
> THE COURT: To present it when?

10

MR. BOSWELL: To present it in the Court of Appeals because they've assumed jurisdiction of the case essentially, and the trial court has limited authority.

THE COURT: But they stayed it because I, also, got the order that if we're going to do it, get it done. Get the final order.

MR. BOSWELL: Good. Good. So it goes up to the Court of Appeals for permission to get it entered here?

THE COURT: I thought I already had. I'd have to go back through it, but I thought the Court of Appeals ordered me to get it done, which is why they've stayed it waiting for the final order.

MR. BOSWELL: That's my clarification point, Your Honor. The way I read it was that the Court of Appeals ordered the Hirsts to present a final judgment for signature.

That's what I read, and then after that order was signed by you, not entered, but signed, they were required to make a RAP 7.2 motion in the Court of Appeals for authority to enter it in the Superior Court, and I take it that that's because they've assumed jurisdiction over the case except for what limited authority the trial court has retained.

So that's what I'm saying I guess is that if a final judgment can be signed by you and filed by you in this Superior Court, but it cannot get entered until the Court of Appeals grants permission under that RAP 7.2.

THE COURT: I have to go back and look at it because I thought the rule, one, they've been getting updates because they're waiting for the final orders to be entered, the final judgment to be entered in Superior Court. That's why they're asking for status reports all along waiting to see what's going on why we haven't entered the final judgment.

MR. BOSWELL: Well, maybe I'm misreading it, but I looked at that notation and I looked at the RAP 7.2 rules and seemed to me that that's what they thought should happen now.

So I don't know. I've got nothing to do with it. The Buddes have nothing to do with it. It's all to the Hirsts. Bring your motion, get a final order, get it signed, get it filed in Superior Court. Then come back up here and seek permission to enter it in the Superior Court, and entry to me is a whole lot more than just signing the final order.

We've got to get a judgment summary in this case. It's required by statute. They haven't presented anything of that kind today. There's nothing in his motion to accept and incorporate in the way of a judgment summary.

11

THE COURT: Right.  I just asked him.  He said if you're going to intend to enter Mr. Boswell's supplemental order and final judgment and Summary Judgment, he is asking to present his own version of it, and I told him I would give him until Monday, the 6th, to present it.  By the end of the week, I will have basically combined your order and his order and enter.

So I asked him if he's going to do his own order to, also, do a judgment summary order and to present it to the Court.  The Court's going to go through it and cross off what I think needs to be entered and what isn't and then sign the Summary Judgment and the supplemental order and final judgment and file it.

Now, if the Court of Appeals, because my understanding from reading it is the Court of Appeals this is wrapping it up.  It's not new stuff. It's finishing out what the Court ordered originally, and if the Court is going to object to that, I'll wait to hear because I believe the Court of Appeals ordered me to get it done and ordered Mr. Hirst and Ms. Hirst to get back down here, get the final judgment and come back up is my understanding.

MR. BOSWELL: And go back up to the Court of Appeals.

THE COURT: Yeah.

MR. BOSWELL: That's the way I understood it, too, but asking permission to get it entered here, entered to me being separate from signing it for signature and filing it in the Superior Court.  Entry to me would be the entry by the clerk along with the judgment summary, which describes the legals in accordance with the statutes.

THE COURT: I believe under the rules, I can enter it because it's not changing anything the Court of Appeals has jurisdiction over.  It's wrapping up my case.

MR. BOSWELL: Okay.

THE COURT: I will file it with the clerk of the court, and now whether they forward it on to the Court of Appeals or until I get something from the Court of Appeals that says I can't enter the final judgment, my understanding is the whole reason it's been stayed is they're waiting for an order from me to finalize it so they can move forward.

I did not know that they had already set up briefing and are moving forward at this point because they've been waiting this long.

MR. BOSWELL: Okay.  Your Honor, I think this gets to the heart of why we're having such a contentious time with the entry of the final judgment in the case, and I suggest to you and represent to you it's because there's some question about the time period that the Buddes are going to be

12

allotted for the preparation and filing of their motion for award of attorney's fees and costs under civil rule 54.

Now, there's some authority for the proposition that you only get ten days after entry of the judgment summary final order in the case, and be that as it may, the rule expressly, itself, says but the Court can make any allowances it wants.

I need more time to get a motion filed and served for statutorily authorized award of attorney fees for the Buddes once we get a final order entered. So I'd ask the Court to consider that.

. . . .

MR.. BOSWELL: If I need more time, should I come back to the Court, Your Honor, come back here?

THE COURT: At this point, I mean, if you're going to file a motion, you can file a motion and get a motion date and serve it on counsel within the timeframes you have.

RP (June 25, 2020) at 145-50.

On August 24, 2020, Mark and Maureen Hirst moved this court to again stay appellate proceedings pending the superior court's decision on incorporating the second survey. On September 21, the superior court signed an amended supplemental order and final judgment and a judgment summary. The September 21 orders incorporated Jim Main's second survey. Mark and Maureen Hirst then filed a motion with this court, under RAP 7.2, to accept entry of the September 21 orders, which the Hirsts characterized as post-judgment orders. The Hirsts also filed a second notice of appeal from the September 21 orders.

On November 3, 2020, this court issued a commissioner's ruling regarding the parties' disputes over appealability. The commissioner ruled that the May 8, 2019 judgment was not a final, appealable order because it contemplated a later addition of a

No. 36827-1-III,
*Hirst v. Budde*

legal description to the awarded property. Nevertheless, the commissioner held that the

Hirsts' appeal from the September 21 orders allowed this appeal to proceed. The

commissioner also concluded that the superior court possessed authority to enter the

September 21 orders:

> Here, the trial court formally entered its September 21, 2020,
> *Judgment Summary* and *Amended Supplemental Order and Final Judgment*
> before this Court gave its permission to enter the decisions. Nevertheless,
> RAP 7.2(e)'s purpose is to ensure the appellate court is able to conduct a
> fair and orderly review of the trial court's challenged decision and any
> modifications to it before this Court makes a final decision on appeal. *State
> v. Dorosky*, 28 Wn. App. 128, 132, 622 P.2d 402 (1981). That purpose can
> be realized here because the appeal proceedings were stayed such that no
> appeal briefs have been filed and the appeal has yet to be submitted to a
> panel for decision. *Appellants' Motion for Permission to Enter Post-
> Judgment[] Orders* is, therefore, granted.

Commissioner's ruling, No. 36827-1-III (Wash. Ct. App. Nov. 3, 2020) at 3-4.

On November 13, 2020, fifty-three days after the filing of the September 21

amended order and judgment but ten days after this court's approval of the September 21

order and judgment, Martin and Kimberlyn Budde moved for attorney fees in the superior

court. The Buddes partially based the attorney fee argument on the Hirsts' refusal to

undergo a second round of mediation. In opposition to the petition for an award of fees,

Mark and Maureen Hirst argued, in part, that the trial court's handwritten striking of

paragraph 4.7 from the May 8, 2019 order constituted a decision to deny attorney fees.

According to the Hirsts, based on this premise, the Buddes needed to file a motion for

14

reconsideration under CR 59(b) or to amend a judgment under CR 59(h) within ten days of May 8.

During a January 8, 2021 hearing on the request for attorney fees, the superior court remarked that her striking of paragraph 4.7 did not evidence an intent to deny reasonable attorney fees and costs. The superior court also commented that the Hirsts prematurely filed an appeal from the May 8 order.

On February 12, 2021, Mark and Maureen Hirst submitted a supplemental memorandum opposing the Buddes' motion for attorney fees. The Hirsts argued that CR 54(d)(2)'s command that claims for attorney fees and expenses be filed no later than ten days after the entry of judgment barred the Buddes' request. The supplemental memorandum suggested that the time for filing the motion began on May 8, 2019, but that, even commencing the running of the ten-day period from the September 21 orders, the November 13 request for attorney fees fell outside the rule's limit.

On February 23, 2021, Martin and Kimberlyn Budde responded to the Hirsts' supplemental memorandum. The Buddes argued that the Court of Appeals' November 8, 2019 ruling staying the appeal delayed the effectiveness of a trial court order until later approval of the order from the Court of Appeals. This court approved the September 21 orders on November 3, 2020. The Buddes filed their motion for fees ten days later.

On February 23, 2021, the superior court issued a letter decision that addressed Mark and Maureen Hirst's supplemental memorandum. We assume that the superior

court lacked the opportunity to consider the Buddes' February 23 response before crafting the letter decision. The letter read in part:

> The Court was delayed in getting this letter out as the Court received a last minute "supplemental memorandum" from JP Diener on behalf of the Hirsts. The memo objects to the award of attorney fees as they believe the request was untimely. Hirsts claim that the request was not filed until the 11th day. The rule states the motion must be filed 10 days after the entry of judgment.
>
> Though, the Court did not seek a response from the Respondent, the Court reviewed the documents in the court file and finds that the request for attorney's fee was made timely. The *first* judgment and order entered by the Court on May 8, 2019, set a future hearing for finalizing the *actual* judgment and survey of the property awarded. The Court crossed off the Budde's request for fees as the case was not final yet, and further hearings would be needed. After numerous hearings were held to try and finalize this case, the Court then addressed the fee request by setting up a briefing schedule for the issue to be decided. The Court finds the request was timely.

CP at 1160-61.

On March 4, 2021, the superior court awarded Martin and Kimberlyn Budde $134,124.30 in attorney fees. The order omitted comment on the timeliness of the motion for attorney fees. The superior court's findings of fact supporting the attorney fee award focused on the Hirsts' refusal to participate in a second round of mediation after representing that they would attempt to reach settlement in the case. At a hearing accompanying the order, the superior court again mentioned the striking of paragraph 4.7 from the May 8 order did not constitute a ruling denying fees in part because the court

16

had not entered final orders. Instead, the superior court intended to retain jurisdiction to

finalize the orders. The superior court commented:

> the Court had ordered Mr. Boswell that if he wanted fees, we were going to have to set up a briefing schedule, discuss it because the Court was still concerned about getting the final documents and the easements done before ever looking at fees based on the amount of hearings that this Court had had.
> The Court was concerned how does the Court make decisions on fees until we're done, and I agree. We entered a couple of judgments, but the Court set final hearings again even with those judgments.
> At that time, the Court said we would address it at a later date. The Court would set up a full hearing on the fees.

RP (March 4, 2021) at 195-96.

## LAW AND ANALYSIS

Mark and Maureen Hirst challenge the superior court's quieting of title in the

name of Martin and Kimberlyn Budde to the disputed territory and the grant of

reasonable attorney fees and costs to the Buddes. We first address the substance of the

lawsuit, the adverse possession counterclaim of the Buddes. We later address the validity

of the award of fees and costs. The latter discussion raises two questions. First, did the

Buddes timely file their motion for an award of fees? Second, did the superior court err

on substantive grounds when awarding fees and costs?

Mark and Maureen Hirst ominously assign forty errors to superior court rulings.

The Hirsts, however, fail to address many assignments in their opening brief. We do not

consider assignments of error unsupported by argument or authority. *In re Marriage of*

17

*Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (2008). Although they assign error to some of the findings, they present no argument in the body of their brief that analyzes any defect in the superior court's findings.

In the statement of facts in their opening brief, Mark and Maureen Hirst recount a version of events favorable to them, but discounted by the superior court. Their narration frequently conflicts with the trial court's findings of fact. An appellant brief's statement of the case should encompass a "fair statement of the facts and procedure relevant to the issues presented for review, without argument." RAP 10.3(a)(5). The Hirsts breach this rule.

Adverse Possession

Mark and Maureen Hirst's challenge to the superior court's adverse possession ruling consists of a reargument of the facts and the importance of discrete facts. For this reason, we readily affirm the superior court's grant of adverse possession to Martin and Kimberlyn Budde.

One may acquire legal title to another's land through adverse possession by possessing the property in a manner that is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). All of these elements must exist concurrently for at least ten years. RCW 4.16.020. This court presumes the holder of legal title maintains possession of their property. Thus, the party claiming adverse possession bears the burden of

18

establishing the existence of each element. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754,

757, 774 P.2d 6 (1989). The proponent must establish the elements of adverse possession

by a preponderance of the evidence. *Draszt v. Naccarato*, 146 Wn. App. 536, 545, 192

P.3d 921 (2008).

Adverse possession presents a mixed question of law and fact. *Lloyd v.

Montecucco*, 83 Wn. App. 846, 853, 924 P.2d 927 (1996). This court reviews the trial

court's challenged findings of fact for substantial evidence sufficient to persuade a fair-

minded person of the truth of the declared premise. *Bryant v. Palmer Coking Coal Co.*,

86 Wn. App. 204, 210, 936 P.2d 1163 (1997). Under this deferential standard, this court

views all factual evidence and inferences in the light most favorable to the prevailing

party. *Lewis v. Department of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006).

This court does not reweigh the evidence or assess the credibility of witnesses anew.

*Davis v. Department of Labor & Industries*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980).

We determine de novo whether the underlying facts support the trial court's findings that

the adverse possession claimant fulfilled the elements. *Lloyd v. Montecucco*, 83 Wn.

App. 846, 852 (1996).

*Exclusive Possession*

In order to be exclusive for purposes of adverse possession, the claimant's

possession need not be absolutely exclusive. *Crites v. Koch*, 49 Wn. App. 171, 174, 741

P.2d 1005 (1987). Rather, the possession must be of a type that would be expected of an

owner under the circumstances. *Crites v. Koch*, 49 Wn. App. 171, 174 (1987). Shared possession with the legal title holder usually defeats exclusivity. *ITT Rayonier, Inc. v. Bell*, 122 Wn.2d 754, 758 (1989). Trifling encroachments by a title owner on land held adversely does not render the claimant's use nonexclusive. *Crites v. Koch*, 49 Wn. App. 171, 175 (1987).

Mark and Maureen Hirst rely on *ITT Rayonier, Inc. v. Bell*, 122 Wn.2d 754 (1989) in arguing that their occasional excursions into the disputed territory defeats adverse possession in favor of the Buddes. Arthur Bell moored a houseboat near property titled to ITT. Bell built a woodshed, sauna, and outhouse on the ITT property, though several of the structures fell into disrepair. Two other families also owned houseboats in the area. The Supreme Court emphasized evidence showing the neighboring families shared occupation of the disputed property. Bell's occasional use of the property did not rise to the level of exclusive possession indicative of a true owner.

Mark and Maureen Hirst emphasize that Maureen's testimony showed neighbors to the Buddes, including the Hirsts, used the disputed land for hiking, riding horses, and four-wheeling. Maureen Hirst testified she hiked and snow-shoed on the disputed land. Despite not citing any trial testimony, the Hirsts further argue in their brief that they extensively used the recreational vehicle campground and the gravel road.

We agree with the Hirsts that Maureen provided testimony of other use. Nevertheless, the superior court never accepted her testimony as the true facts. No

finding of fact adopted such testimony. This court does not reweigh the evidence on review. Even if the trial court had credited Maureen Hirst's testimony, the use by the Hirsts and neighbors could be consistent with trifling neighborly encroachments on the land. Both the Buddes and Hirsts developed their properties for shared use: the Buddes built a recreational vehicle campground and zipline while the Hirsts created an events venue. A true owner of the disputed property of this type could also have allowed neighbors to recreate and camp on the property.

*Actual and Uninterrupted Possession*

Mark and Maureen Hirst assert two contentions that, if accepted, would defeat the element of actual and uninterrupted possession. First, according to the Hirsts, the evidence showed that Martin and Kimberlyn Budde did not establish actual and uninterrupted possession for a ten-year span of time. Second, the Buddes did not establish actual and uninterrupted possession inside the entire territory awarded them. The latter argument presumably would defeat adverse possession only to a limited section of the awarded land.

Mark and Maureen Hirst claim that insufficient evidence supported a finding that the Buddes occupied the entirety of the awarded property for the requisite ten-year period. Once the claimant adversely and with hostility enters the property, the claim is not interrupted absent actual cessation of the possession. *Lingvall v. Bartmess*, 97 Wn. App. 245, 256, 982 P.2d 690 (1999). Mere protest will not suffice. *Lingvall v. Bartmess*,

21

97 Wn. App. 245, 256 (1999).  Over the ten-year period, the claimant must establish the same type of use that a true owner would render of the property, considering its nature, character, location, and ordinary uses.  *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 209-10.

The superior court's findings of fact establish that the Hirsts first protested the Buddes' use of the adversely claimed property after the 2016 survey and the erection of the fence along the survey line.  The trial court discredited the Hirsts' testimony that they granted the Buddes permission to use the adversely claimed property.  In order to establish adverse possession, the Buddes needed to show actual possession at least ten years prior to the Hirsts' objection.

The trial court found that the Buddes began clearing the bench area in 2004 and 2005.  This included cutting trees and clearing brush.  This finding is supported by the evidence.  Martin Budde testified that he made significant progress in the clearing the bench area, moving east to west toward the ribbon line.  He also stored materials on the bench.  By the beginning of winter 2005, Mr. Budde had cleared the bench up to the "end of the ribbon line."  CP at 664.  The ribbon line crossed the "narrows" which is the east entrance to Maureen's Meadow.  RP at 412.  In the early part of 2006, Mr. Budde used a tractor to clear up the area where the road would be placed in 2007, making piles of slag, cutting trees and clearing the property.

The court found that "Mr. Budde and his daughters started working on the 'bench area' as early as 2004, by clearing the land where his RV campground would soon be situated. The RV campground was started in 2004 and 2005. Since the campground area is the bigger part of the 'bench area' where the Buddes' shop/loft is, it would fall within the scope of the adverse possession claimed by the Buddes." CP at 145. In the same finding, the court found that the sea container used by the Buddes when they moved in, was set in the bench area, partially within the disputed area and later replaced by the shop. These findings are supported by the evidence.

Mark and Maureen Hirst focus on the extent of the superior court's definition of the adversely claimed area. Caselaw requires a well-defined boundary to property acquired by adverse possession. *Skoog v. Seymour*, 29 Wn.2d 355, 365, 187 P.2d 304 (1947), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853 (1984). Nevertheless:

> An adverse possessor need not enclose the claimed parcel. Moreover, the trial court need not "find a blazed or manicured trail along the path of the disputed boundary; it is reasonable and logical to project a line between objects when the extent of the adverse possessor's claim is open and notorious as the character of the land and its use requires and permits." A boundary may be defined *by the use of the property itself*, by a natural feature, or by a fence.

*Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 212 (1997) (quoting *Lloyd v. Montecucco*, 83 Wn. App. 846, 854 (1997)) (emphasis added) (footnotes omitted).

While the trial court did not find mutual acquiescence, the court found that the parties shared a mutual understanding of the location of the property line. The Buddes' use of the area, including the clearing of trees and brush, construction of the loop road, RV area, and shop building, supported a finding of actual possession. The Hirsts erected a fence along that line when neighborly relations soured.

The Hirsts claim the superior court failed to enter any express finding that delineated the extent of the land awarded to the Buddes. Nevertheless, the superior court's award of property adopted Surveyor Jim Main's implementation of earlier trial court's orders. The Hirsts enjoyed an opportunity to object to Main's first survey, and the court ordered adjustments to the survey in order to achieve the court's intention.

Mark and Maureen Hirst complain that the superior court accepted Martin Budde's subjective beliefs about the extent of his property and those beliefs lacked relevance to an award of land for adverse possession. The Hirsts highlight a passage from *Chaplin v. Sanders* in which the Supreme Court held that "the possessor's subjective belief whether the land possessed is or is not his own and his intent to dispossess or not dispossess another are irrelevant to a finding of *hostility*." *Chaplin v. Sanders*, 100 Wn.2d 853, 855 (1984) (emphasis added). Nevertheless, *Chaplin* does not preclude the superior court from concluding that the possessor's subjective beliefs about the extent of his or her property confirmed objective findings of adverse use of the entirety of the disputed land.

24

Mark and Maureen Hirst characterize Martin Budde's assertions about property lines as unreliable and that Budde maintained a history of encroaching on neighbor's property. They emphasize testimony that he once needed to remove a zipline he built on another neighbor's property. The Hirsts do not analyze further how such testimony influenced the superior court's findings. The superior court remained free to bestow ample weight to the testimony of Martin Budde. The fact that Budde encroached on someone else's property does not preclude an award under adverse possession for other land.

The Hirsts argue that the Buddes did not actively utilize the whole area granted in the adverse possession award for the entire duration of the ten-year period. For example, the space the shop building came to occupy once held a smaller shipping container. Of course, this contention would only relate to a small area. More importantly, the Buddes possessed the area by reason of the placement of the sea container.

Courts may create a penumbra of ground around areas actually possessed when reasonably necessary to carry out the objective of settling boundary disputes. *Lloyd v. Montecucco*, 83 Wn. App. 846, 853-54 (1996). Courts may also project boundary lines when reasonable and logical to do so. *Lloyd v. Montecucco*, 83 Wn. App. 846, 854 (1996). The superior court did not err in drawing the boundary lines reasonably and logically to encompass the areas the Buddes used as their own property.

*Open and Notorious*

Possession is open and notorious if the legal titleholder has actual or constructive notice of the claimant's use. *Chaplin v. Sanders*, 100 Wn.2d 853, 862 (1984). This court considers the nature of the land when deciding whether the record owner had actual or constructive notice. *Chaplin v. Sanders*, 100 Wn.2d at 862. In other words, the claimant must show that the true owner knew, or should have known, that the occupancy constituted an ownership claim. *Anderson v. Hudak*, 80 Wn. App. 398, 405, 907 P.2d 305 (1995).

The Hirsts argue that the Budde children's hiking and operation of four-wheel vehicles in the disputed area could not constitute a sufficiently open and notorious use during the beginning of the possession period. Nevertheless, the superior court relied on other evidence to enter this finding in addition to the hiking and riding. The trial court also found that the Buddes cleared the bench area of trees and brush beginning in 2005.

*Hostility*

The hostility element does not refer to enmity or ill-will, but rather to the claimant's use of the property as its true owner. *Chaplin v. Sanders*, 100 Wn.2d 853, 857-58 (1984). The hostility element does not require a person do everything an owner could do with that land, but the claimant's treatment of the land as his or her own property provides evidence of a hostile claim. *Lingvall v. Bartmess*, 97 Wn. App. 245, 254 (1999). In *Lingvall v. Bartmess*, this court held that the clearing of brush and wild

26

shrubbery, landscaping, mowing, and maintenance of an area sufficiently demonstrated hostility. *Lingvall v. Bartmess*, 97 Wn. App. 245, 254 (1999).

Express or implied permission from the true owner negates the hostility element because permissive use is inconsistent with a true owner's use. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010). The Hirsts point to *Granston v. Callahan*, 52 Wn. App. 288, 759 P.2d 462 (1988) and argue the initially friendly relationship between the Hirsts and the Buddes demonstrates the Buddes' use of the property as indisputably permissive and not hostile in nature. In *Granston v. Callahan*, two brothers had "'free license'" to use the other's property. 52 Wn. App. at 291. The cooperative nature of the brothers defeated a claim that one's work on the other's property was hostile.

The superior court entered no analogous finding concerning cooperation by the Hirsts and the Buddes. The two families lacked any familial relationship. The Hirsts and Buddes may have been free to use one another's property, but other evidence showed that the parties believed the adversely possessed area to belong to the Buddes. The Hirsts cite testimony in which Martin Budde admitted assisting Maureen Hirst with a project unrelated to the adversely possessed property. Nevertheless, Budde could have helped with projects on Hirst's property while also engaging in projects on the property he believed to be his own.

Martin and Kimberlyn Budde asserted other theories helpful to a ruling quieting title in them to the disputed territory. We need not and do not address the other legal theories.

Superior Court Attorney Fees Award

We now review the superior court's award of reasonable attorney fees and costs to Martin and Kimberlyn Budde. RCW 7.28.083(3) provides for an attorney fee award in an action for adverse possession:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

Because of the insertion of the word "may" in the statute, we deem any award of fees to be discretionary. When a statute authorizes attorney fees, this court upholds the award of fees unless the trial court abuses its discretion with a ruling manifestly unreasonable or based on untenable grounds or reasons. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018).

We first determine whether Martin and Kimberlyn Budde timely petitioned for an award of reasonable attorney fees and costs. CR 54(d)(2) reads:

> *Attorneys' Fees and Expenses.* Claims for attorneys' fees and expenses, other than costs and disbursements, shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial.

28

> Unless otherwise provided by statute or order of the court, the motion must be filed no later than <u>10 days after entry of judgment</u>.

(Underscoring added.) The superior court entered an order and judgment on May 8, 2019, but the judgment contemplated additional proceedings to legally describe the property quieted in the Buddes. On May 16, 2019, Maureen and Mark Hirst filed an appeal and the superior court stayed enforcement of the order and judgment pending appeal except to direct the parties to complete the survey. On November 8, 2019, the appeals court stayed the appeal until a final order by the superior court. On June 22, 2020, this court lifted the stay of appellate proceedings. On September 21, 2020, the superior court signed (1) an amended supplemental order and final judgment that incorporated a survey for the disputed territory awarded to the Buddes and (2) a judgment summary. On November 3, 2020, this court, pursuant to RAP 7.2(e), approved the superior court's September 21 order and judgment. The Buddes filed their request for an award of reasonable attorney fees and costs ten days later.

The procedure presents three possible dates on which we could declare the ten-day limitation period commenced for purposes of filing the motion for award of fees: May 8, 2019; September 21, 2020; or November 3, 2020. Unless we nominate November 3 as the date, the Buddes untimely filed the request.

After reviewing the law and considering fairness in response to this once in a lifetime question, we hold November 3, 2020 to be the date on which the ten days began

to run. The May 2019 order was not final because the superior court anticipated adding to the order. Although Maureen and Mark Hirst wisely filed a notice of appeal in May 2019 in order to guarantee the appeal's timeliness, the Hirsts need not have done so.

The September 21 superior court order and judgment may have lacked validity until approved by this reviewing court. RAP 7.2(e) reads in part:

> Postjudgment Motions and Actions to Modify Decision. The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.

(Boldface omitted.) The motion for fees was probably a postjudgment motion authorized by civil rules that did not change the decision already on review to this reviewing court. Thus, according to RAP 7.2(e), appellate court approval for the order was not required. Nevertheless, this court's November 8, 2019, order of stay directed the parties to obtain permission from this court to file any final order in the superior court. The June 25, 2020 colloquy between the Buddes' counsel and the superior court showed an understanding that any superior court order required court of appeals approval. This court cannot fault the Buddes for believing that the September 21, 2020 amended judgment and order was not final until approval by this court on November 3, 2020.

The November 8, 2019 order could be read to require preapproval from this court before entry of the September 21, 2020 amended judgment and order such that the November 3, 2020 approval was worthless. But such a reading promotes form over substance. Even if we accepted the premise of preapproval, the September 21 order and judgment would lack validity and not constitute a final judgment for purposes of beginning the ten-day limitation period.

We must construe both the superior court civil rules and the rules of appellate procedure to secure a just result and to facilitate a decision on the merits. CR 1; RAP 1.2(a). We may waive any of the rules on appeal. RAP 1.2(c). We decide to reach the merits of the Buddes' request for an award of reasonable attorney fees and costs.

Maureen and Mark Hirst contend that the superior court failed to recognize that the Hirsts prevailed on some issues. The Hirsts impliedly contend that the court should award no party fees because of the countervailing rulings. We question whether the Hirsts prevailed on any issue, but we note that the Hirsts do not identify where in the superior court record they forwarded this contention. Our review of the Hirsts' attorney fee memoranda reveals no such argument. We decline to address this argument because the Hirsts did not assert it before the superior court. RAP 2.5(a).

When both parties prevail on major issues, neither may be entitled to attorney fees. *Tallman v. Durussel*, 44 Wn. App. 181, 189, 721 P.2d 985 (1986). But different attorney fee statutes may serve different purposes such that they should be evaluated in

accordance with their own purposes. *Guillen v. Contreras*, 169 Wn.2d 769, 777, 238 P.3d 1168 (2010). We deem the trial court did not abuse its discretion when impliedly determining that the Buddes prevailed on the major issue of adverse possession such that fees could be awarded them.

The Hirsts argue that the trial court erred in basing the attorney fee decision on the Hirsts' unwillingness to engage in a second round of mediation. Nevertheless, the Hirsts indisputably opposed a second round of mediation. Since the superior court possesses broad discretion in awarding fees and costs in an adverse possession suit, we do not fault the superior court for considering the Hirsts' refusal to mediate a second time.

Finally, Mark and Maureen Hirst argue that the trial court's striking of paragraph 4.7 from the May 8 order constituted a decision not to award attorney fees. The trial court, however, struck paragraph 4.7 based on the Hirsts' objection that no decision on attorney fees had yet been reached. The absence of a ruling on the proposed paragraph should not prevent a later ruling by the superior court.

## Attorney Fees on Appeal

Both parties request attorney fees under RCW 7.28.083(3). The statute declares:

> (3) The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court *may* award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

No. 36827-1-III,
*Hirst v. Budde*

(Emphasis added.)  Use of the word "may" bestows discretion on this court.  *State v. Hawkins*, ___ Wn.2d ___, ___, 519 P.3d 182, 191 (2022).  We exercise this discretion by denying each party an award of fees.

CONCLUSION

We affirm the superior court award of property to Martin and Kimberlyn Budde. We also affirm the superior court's grant of reasonable attorney fees and costs to the Buddes.  We grant the Buddes reasonable attorney fees and costs incurred on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

33